Robbins B. Stoeckel, The Hartford-Connecticut Trust Company, Co-Executors Under the Will of Ellen Battell Stoeckel, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 1365. Promulgated November 4, 1943.

*Cyril Coleman, Esq.*, for the petitioners.
*M. L. Sears, Esq.*, for the respondent.

OPINION.

Arundell, *Judge*: This proceeding involves a deficiency in estate tax determined by the Commissioner in the amount of $18,968.40.

The dispute arises from the Commissioner's holding that a bequest of $60,000 was not deductible from gross estate because the donee, the Litchfield County University Club, herein known as the club, was not "organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes" within the meaning of section 812 (d) of the Internal Revenue Code. Petitioners are the executors of the estate of the donor, Ellen Battell Stoeckel, who died on May 5, 1939, a resident of Norfolk, Connecticut. The estate tax return was filed in the district of Connecticut. The proceeding was submitted upon a stipulation of facts.

The club was specially chartered by act of the General Assembly approved by the Governor of the State of Connecticut on March 2, 1899. By the act the club was created "for the purpose of promoting social intercourse and good fellowship among its members and for the advancement of the interests of the 'higher education' by such lawful means as shall be expedient and proper for the above named purposes." The club's constitution, adopted in 1900, provided: "The objects of this Club shall be the promotion of social intercourse and good fellowship among its members, and the advancement of the interests of the higher education." Membership was limited by the constitution to 200 in number and to residents of Litchfield County who had acquired a degree at college or a similar institution of learning. The club was organized and sponsored by the late Carl Stoeckel and subsequently by his widow, the decedent herein, who was deeply interested in the club and its activities and made numerous gifts and contributions to it, culminating in the bequest of $60,000 which is the subject of this controversy. Due almost entirely to this bequest and gifts from Stoeckel and Mrs. Stoeckel, the assets of the club on May 31, 1941, consisting of securities and cash, aggregated $102,000.

From the time the club was organized until the death of Mrs. Stoeckel in 1939 the club held semiannual lecture-dinner meetings at which speakers of national and international reputation addressed the members on subjects relating to art, music, literature, and education. The expenses of the meetings were paid by Stoeckel and Mrs. Stoeckel. On November 16, 1939, the club voted to hold but one annual lecture-dinner meeting. The expenses of the meetings for the years 1939, 1940, and 1941 were paid by the club and amounted to $537, $675, and $548, respectively. There is a provision in the bylaws to the effect that the club's contribution for the expense of the midwinter meeting shall be limited to $500.

Funds of the club have been derived from two sources—annual dues of $5 from each member and gifts from Stoeckel and Mrs. Stoeckel.

In its early years the club sponsored an oratorical contest for boys in Litchfield County and awarded prizes therefor. Beginning in

1904 the club has sponsored the publication of works pertaining to Litchfield County and in subsequent years there have been so published eight volumes of the Litchfield Literature Series. The club's sponsorship consisted of assuming the cost of printing 300 copies of each volume, which were distributed to members of the club and to libraries throughout the country free of charge. Each author also received an honorarium of $200. Also beginning in 1904 the club from time to time, by awarding a prize of $1,000, sponsored a musical composition for the orchestra to be composed by a composer born in and a resident of the United States in order to foster and advance the cause of American music. The club also erected a bronze memorial to the memory of Harriet Beecher Stowe and to Henry Ward Beecher in the town of Litchfield, their birthplace. Beginning in 1914 and down to 1942 the club has awarded a total of 67 scholarships to Litchfield County boys to assist them in their college education. The first, in the amount of $200, was established in 1914; a second one in the same amount was established in 1920; and in 1929 a $400 scholarship was established to supersede the two former scholarships of $200 each and in addition a $500 scholarship was founded. The $400 scholarship was required by the bylaws to be paid from the dues and the $500 scholarship was to be paid from income on invested funds. In 1936 an additional scholarship of $400 was established and in 1939 the club authorized its scholarship committee to award additional scholarships of not more than $400 if income permitted. From 1938 to 1942 the club awarded annually five scholarships aggregating $1,700 per year. It is contemplated that the number of scholarships will be increased to the extent the income of the club will permit.

All the income of the club from the time of its formation until the death of Mrs. Stoeckel in 1939, and thereafter all the income except the amounts paid for the annual lecture-dinners as set forth above, was devoted to the prizes, publications, and scholarships hereinbefore described and any excess was added to capital. Since the foundation of the club no officer or member has received any compensation from the club except the honoraria awarded to authors as set forth above. The club has no club house or club rooms or regular place of meeting. Since its inception the club has operated on the principle that its income (dues and income from invested funds) should be devoted, apart from small administrative expenses, to activities hereinbefore described and that gifts to it and unexpended income should be regarded as capital which would provide a perpetual means of continuing its activities.

On July 9, 1941, the constitution of the club was amended to provide that "the objects of this Club shall be the advancement of the interests of higher education and good fellowship among its members." Pur-

suant to application on behalf of the club the act incorporating the club was amended by an act of the General Assembly approved by the Governor of the State of Connecticut on July 8, 1943. This amendment provides "the exclusive purpose of said corporation to be the advancement of the interests of higher education by the education of its members, by assisting worthy students and by assisting schools, colleges or universities by such lawful means as are suitable for such purposes." The amendment forbids the use of funds for other than corporate purposes and also forbids the payment of any funds to any of the officers, members, agents, or employees except as reasonable compensation for services rendered. It also prohibits the club from engaging in propaganda or otherwise attempting to influence legislation. It declares the club to be exempt from taxation under the laws of the State of Connecticut and provides that in the event of dissolution the assets of the club shall be placed in a perpetual trust to carry out one or more of the corporate purposes. The amendment is to become effective upon the filing of a notice of its acceptance by the club. Because of transportation difficulties there have been no meetings of the club since July 9, 1941, but at the next meeting the amendment will be formally acted upon.

The Commssioner's view is that the club was organized for two purposes; although one was to advance the interests of higher education, the other was to promote social intercourse and good fellowship among the members. The Commissioner treats the two as mutually exclusive and concludes that it would have been possible for the gift of $60,000 made by decedent to have been used entirely for good fellowship and social intercourse, purposes which clearly are not exclusively educational, literary, or charitable. As a consequence, he asserts, we need not inquire into the manner in which the funds of the club have actually been disbursed. Petitioners, on their part, argue that any organization bringing together persons of common interests in art, music, literature, or education will necessarily promote the good fellowship and social intercourse of its members, whether such is declared in the charter to be one of its purposes or not. These words, therefore, in the present case were mere surplusage and must be read in connection with and as only incidental to the primary purpose of furthering higher education.

It is clear, of course, that to meet the statutory requirement the club must have been organized exclusively for one or more of the permitted purposes. In *John R. Sibley et al., Executors*, 16 B. T. A. 915, we granted exemption, as well as a deduction for contributions, to a corporation the articles of which contained a stated purpose, among others, to "promote a spirit of goodfellowship, fraternity and social intercourse among its members * * *." We quoted on page

918 from the opinion in *George E. Turnure*, 9 B. T. A. 871, in part as follows:

We have not overlooked the social aspect of the Brotherhood. It would seem clear that if its main purpose was social, it would not meet the test of the statute. Practically all religious and educational associations and some charitable organizations make use of social or athletic features, but only as a means to an end. Unless the social feature predominates such organizations are none the less exclusively religious, educational, or charitable. The general predominant purpose is principally to be considered. * * *

Applying this test to the facts before us, we can not say that the club was organized exclusively for educational, literary, or charitable purposes. From the standpoint of the members themselves the most important function of the club would seem to have been the meetings. There were only two of these each year during the 40 years of the club's existence prior to decedent's death and only one in each of the following three years. These were dinner meetings at which a lecture was given by an outstanding speaker on cultural subjects. If these meetings stood alone as the only purpose of the club's organization we should have no hesitancy in saying that the club was not one of those contemplated by section 812 (d). The inference would be impelling that the social aspect of the dinner and the entertainment of hearing a good speaker would predominate, uplifting and broadening though the experience might have been from an intellectual viewpoint. See *Davison* v. *Commissioner*, 60 Fed. (2d) 50, affirming 21 B. T. A. 251, on this issue.

To fall within the favored class, therefore, we must be able to find that other functions of the organization were of such importance or significance as to reduce the social aspect to the point where it was only incidental. This, however, we are unable to do. No scholarship of any kind was awarded in the first 15 years of the club's existence and only one of $200 a year was given in the following six years. In the first five years the only activity was the sponsoring of an oratorical contest for boys. A memorial was erected to two of the town's outstanding citizens and "from time to time," though we do not know how often, a prize was awarded for a musical composition. The only other activity was the sponsoring of the publication of works pertaining to Litchfield County.

Upon the whole record we can not say that the entertainment and social aspects of the semiannual dinners, especially in the early years, did not predominate. Certainly, it could not be said that in the first five years they were merely incidental to holding an oratorical contest for boys. The facts presented do not convince us that the club was organized exclusively for the required purpose. In the light of the club's early history, it is none too clear that the words "good fellowship" and "social intercourse" were merely surplusage.

Petitioners' counsel suggests that recognized charitable organizations should not be denied exemption solely on the ground that their annual meetings are enjoyable as well as informative. In our opinion this misses the point. The illustration presupposes that the annual meeting is only an incident in the year's work, which is the very point in issue here. So far as we can learn from the stipulated facts the holding of the dinner meetings was an important, if not the most important, reason for organizing the club. It may be that the club would be exempt from income tax under section 101 of the code, other than subdivision (6), which corresponds to the section under consideration here, or that its dues were not subject to the tax imposed by section 1710 of the code. This would not serve to make the gift in question deductible, for in our judgment the donee in the case at bar does not meet the requirements of section 812 (d).

*Decision will be entered for the respondent.*