## Estate of Robert Marshall, James Marshall, Executor, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 111279.   Promulgated November 30, 1943.

*Simon Gross, Esq., Mark Eisner, Esq.,* and *Ferdinand Tannenbaum, Esq.,* for the petitioner.
*Thomas H. Lewis, Jr., Esq.,* for the respondent.

### OPINION.

Harron, *Judge:* Decedent, a resident of the City and State of New York, died on November 11, 1939. By his will, after a specific bequest of $3,000, he directed that his residuary estate be divided into four parts, and he bequeathed such parts to three separate trusts. There were five individual trustees named in each trust. The trusts were in perpetuity and the trustees were directed to invest and reinvest the principal and apply the income and such part of the principal as they may in their unlimited discretion deem necessary for the objects and purposes of the trust for which they were the trustees.

The first trust, consisting of two parts, provided that the income and principal be used for the following purposes:

The education of the People of the United States of America to the necessity and desirability of the development and organization of unions of persons engaged in work or of unemployed persons and the promotion and advancement of an economic system in the United States based upon the theory of production for use and not for profit. The objects and purposes herein set forth shall be carried out through lawful means and only through lawful means, and for the purpose of carrying out such objects and purposes, I grant to the Trustees named full power and authority to employ and pay organizers, lecturers and writers and such other assistants and employees as they may

deem necessary for properly fulfilling the objects and purposes of the trust as set forth by me herein, and to print, publish and distribute pamphlets, books, magazines and newspapers and generally to use any and all lawful means toward the furtherance of such objects and purposes, and they shall further have the authority to draft bills and acts, laws and other legislation and use all lawful means to have the same enacted into the law of the various States of the United States of America and by the Congress of the United States of America.

The second trust, consisting of one part, provided that the income and principal be used for the following purposes:

The safeguarding and advancement of the cause of civil liberties in the United States of America and the various States and subdivisions thereof by all lawful means and actions, with full power and authority to the Trustees to print, publish and distribute pamphlets, books, magazines and newspapers and generally to use any and all lawful means to bring to the knowledge of the citizens of the United States of America the importance and necessity of preserving and safeguarding the cause of civil liberties. Said Trustees shall have the power to draft bills and acts, laws and other legislation and use all lawful means to have them enacted into the law of the various States and subdivisions thereof and by the Congress of the United States to the end that the civil liberties guaranteed to the citizens of the United States by their Federal constitution and by the various State constitutions be forever maintained, preserved and developed.

The third trust, consisting of one part, provided that the income and principal be used for the following purposes:

The preservation of the wilderness conditions in outdoor America, including, but not limited to, the preservation of areas embracing primitive conditions of transportation, vegetation and fauna, and to that end said Trustees shall have full power and authority to employ and pay lecturers and writers and such other assistants and employees as they may deem necessary for properly carrying out the purposes of the trust and to print, publish and distribute pamphlets, books, magazines and newspapers and generally to use any and all lawful means to increase the knowledge of the citizens of the United States of America as to the importance and necessity of maintaining wilderness conditions in outdoor America for future generations, and said Trustees shall be empowered to use all lawful means in opposing statutes or regulations which will or may affect adversely the maintenance of wilderness conditions, and said Trustees shall have the power to draft such bills and acts, laws and other legislation and use all lawful means to have the same enacted by the various States of the United States of America and by the Congress of the United States as will tend to safeguard and preserve wilderness conditions in outdoor America.

The trustees of each trust were authorized and empowered to transfer and assign the whole or any part of the principal or income constituting the trust fund "to a membership or other nonprofit making corporation or corporations organized under the laws of the State of New York, whose objects and purposes shall be in accord with or include the objects and purposes for which said trust is created." The trustees were also authorized in their discretion "to incorporate or cause to be incorporated under the General Laws of the State of New York or by special act of the legislature of the State of New York a

corporation or corporations which shall have authority, among such other powers as may be conferred upon it, to take and hold the property constituting the trust fund with respect to which such corporation shall have been organized, and to administer, invest and dispose of the same and to devote the principal thereof and the income therefrom to the objects and purposes specified in said Trust." In the event of such incorporation, the testamentary trustees were to act as directors of the corporation, and any vacancy among the trustees was to be filled by a majority of the remaining trustees.

The Attorney General of the State of New York, as the statutory representative of the unknown beneficiaries of trusts for charitable, educational, religious, and benevolent purposes, has approved and consented to the administration of these trusts.

The only question for determination is whether the value of the testamentary trusts created by decedent is deductible from the value of the gross estate as bequests exclusively for charitable, scientific, or educational purposes under section 812 (d) of the Internal Revenue Code, as amended by section 408 (a) of the Revenue Act of 1942.[1] Both parties agree that the amendment made by section 409 (a) of the Revenue Act of 1942 is not retroactive and, therefore, does not affect this proceeding.

Petitioner contends that the objects and purposes of the trusts are "exclusively" charitable, scientific, and educational, even though the trustees of each trust were expressly authorized by decedent's will

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers, (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return) to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. If the tax imposed by section 810, or any estate, succession. legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes. The amount of the deduction under this subsection for any transfer shall not exceed the value of the transferred property required to be included in the gross estate.

"to draft bills and acts, laws and other legislation and use all lawful means to have the same enacted into the law of the various States of the United States of America and by the Congress of the United States of America." His contention is that these latter powers are merely incidental to the primary purposes of the trusts, and thus insufficient to defeat the deduction under section 812 (d) of the Code.

Under the statute, the word "exclusively" has been liberally construed, and a bequest is deductible if its general or predominant purpose is religious, charitable, scientific, or educational. *Girard Trust Co.* v. *Commissioner*, 122 Fed. (2d) 108; *Slee* v. *Commissioner*, 42 Fed. (2d) 184; *George E. Turnure*, 9 B. T. A. 871. Under decedent's will, however, it can not be said that these bequests were predominantly for charitable, scientific, or educational purposes. Although the education of the public was an important purpose of the trusts decedent intended another purpose, which was to draft bills and acts and use all lawful means to enact them into law. This latter purpose was too important and prominent to be classed as incidental, contributory, or subservient to a primary purpose of education. Read in its entirety, the will shows an intent and purpose not only to educate, but also to bring about legislation. Certainly, we can not say under these testamentary provisions that the legislative aspect was only incidental to a primary purpose which was charitable or educational. *Estate of Ellen Battell Stoeckel*, 2 T. C. 975. There can be little doubt that under the terms of decedent's will a substantial part of the trust funds could be used to advocate economic and legislative changes. In that capacity, the trustees would be engaged in political activity. It is well settled that a legislative program is outside the intendment of the statute, and a bequest which may be used for that purpose is not exclusively educational, scientific, or charitable.

In *Slee* v. *Commissioner, supra,* the court, in holding that a donation to the American Birth Control League was not deductible as a contribution to a charitable, scientific, or educational association, said: "Political agitation as such is outside the statute, however innocent the aim * * *. Controversies of that sort must be conducted without public subvention; the Treasury stands aside from them."

In *Leubuscher* v. *Commissioner*, 54 Fed. (2d) 998, the court, in allowing the deduction of a legacy to a foundation organized to expound the principles of Henry George, pointed out that "The money was to be used for teaching, expounding and propagating, not for seeking the passage of legislation."

In *John H. Watson, Jr.*, 27 B. T. A. 463, the Citizens League of Cleveland, to which the contribution there in question was made, classified candidates for public office, and when considered desirable, ad-

vocated amendments to existing laws and presented its recommendations to the proper legislative body. Such activities were held to be not so exclusively educational as to allow the contribution to be deductible.

In *Vanderbilt* v. *Commissioner*, 93 Fed. (2d) 360, the court, in denying the deduction of a bequest to a nonprofit corporation, organized to educate public sentiment to a recognition of equality of sexes and to secure for women complete equality with men, said:

* * * The procuring of the enactment and repeal of laws through the drafting of bills, their advocacy, the furnishing of facts and information in their support, and the payment of the cost of carrying on such activities are not educational but political. * * *

In this proceeding, as in the *Vanderbilt* case, *supra*, the trustees were authorized to draft bills and to use all lawful means to secure their enactment into law. It can not be doubted that under this provision of decedent's will, the trustees could furnish facts and information in support of their bills and pay the cost of such activity as was necessary to secure the passage of legislation. Although evidence of the actual activities of the trustees has not been presented, their powers are derived from the will, and that is the guidepost which we must follow. Under all the circumstances, it is held that the value of the bequests to the three trusts is not deductible under section 812 (d) of the Internal Revenue Code. Since certain adjustments have been stipulated by the parties, accordingly,

*Decision will be entered under Rule 50.*