Estate of George H. Wadleigh, Deceased, Marie Moore, et al., Executrices v. Commissioner.
Estate of George H. Wadleigh, Deceased v. Commissioner
Docket No. 805.
United States Tax Court
1945 Tax Ct. Memo LEXIS 152; 4 T.C.M. (CCH) 664; T.C.M. (RIA) 45226; June 22, 1945
*152 The will of George H. Wadleigh bequeathed a legacy to the Ruskin Art Club of Los Angeles. The Club was a non-profit corporation under the laws of California with approximately 50 members. It was not operated for profit, no part of its earnings inured to the benefit of any individual and it was not used to influence legislation. The club owned a bungalow in a residential section of Los Angeles which was used as a club house. The club held weekly meetings for members and their guests to hear lectures on artistic and literary topics. These lectures were usually prepared by club members but occasionally guest speakers addressed these meetings. The subjects were highly intellectual and notices of the meetings were published in the Los Angeles papers. Because of the location of the club the members prepared a luncheon at the weekly meeting which was served at cost. The luncheon was furnished only for the convenience of the members and was not a part of the program. In the past 20 years 3 attempted bridge parties failed for lack of interest. There were no other social functions. The receipts of the club were derived mainly from rental of its club rooms, dues and gifts. No art contests have *153 been held nor art scholarships have been available because of the lack of funds. Until it received the Wadleigh bequest the club was in debt for the purchase of the club house. An archaeology library named for the husband of a member was founded and maintained by the club. Held, on the evidence, that the social features of the club were incidental to the main purpose of providing a forum for the discussion of educational and literary topics and that the club is organized and operated for literary and educational purposes within the meaning of section 812 (d), Internal Revenue Code. George E. Turnure, 9 B.T.A. 871. Clark J. Millison, Esq., 518 Fidelity Bldg., Los Angeles, Calif., for the petitioners. B. H. Neblett, Esq., for the *154 respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves an estate tax deficiency of $2,110.99, determined by respondent after an audit of the estate tax return filed by the executrices of the estate of George H. Wadleigh, who died December 31, 1939. The return was filed with the collector of internal revenue for the sixth collection district of California. Petitioners have conceded an additional liability of $686.16 but challenge the correctness of respondent's determination that a bequest to the Ruskin Art Club of Los Angeles is not an allowable deduction. The sole issue before us is whether that bequest is deductible under section 812 (d) of the Internal Revenue Code. Findings of Fact In June 1937 George H. Wadleigh and Harriet Wadleigh, his wife, gave $9,400 to the Ruskin Art Club of Los Angeles and received its note in that amount. The note bore interest at 5 percent and provided that it was to be canceled at their death in lieu of any legacy or claim against Mr. Wadleigh's estate. Because of the reservation of a life estate to Mrs. Wadleigh the value of the bequest at the date of Mr. Wadleigh's *155 death has been stipulated at $8,493.16. The Ruskin Art Club, hereinafter referred to as the Club, is the oldest organization of its kind in the City of Los Angeles. It was named for John Ruskin, the author and critic. It was first organized in 1888 as an informal association and in 1905 was incorporated under the laws of California as a non-profit corporation. Pertinent features of its charter are as follows: "Second. That this corporation is formed solely for educational purposes - and not for pecuniary profit - and especially: "a. For the study of art in any and all of its branches. "b. To provide courses of instruction on various subjects for the members of the Club and generally to do any and all things tending to the intellectual advancement of its members, and any and all things usually undertaken by, or appertaining to, clubs of this character, but this corporation shall be especially devoted to the study of art as aforesaid, and to promoting interest therein and encouraging and furthering the study of art by all such means as it may desire. * * * * *
"Third. That the term for which said corporation shall exist is fifty (50) years. * * * * *
"Sixth. That *156 there is no capital stock, and there are no shares of stock." * * * * *
Management was vested in a board of trustees of 11 members. The by-laws of the Club limited membership to 200 and provided that in the event of dissolution or that the Club should discontinue the purpose for which it was formed, all of the Club property should be sold, its debts paid and the then acting board of directors were to make a gift to the Hector Alliot Memorial Library of Archaeology in the Southwest Museum of Los Angeles. The remaining assets were to be given to the Los Angeles County Museum to be spent for appropriate works of art. The only restriction on this gift was that the art objects were to bear the inscription, "The gift of the RUSKIN ART CLUB to the people of Los Angeles." It was further provided that the by-laws could be amended at any regular meeting by a two-third vote of those present. Until 1926 the club rooms were located in downtown Los Angeles. At that time the Club purchased a building to be used for club purposes which was situated at 800 South Plymouth Street, Los Angeles, California. This is a residential area away from the downtown section. It is a small bungalow with *157 a large living roomauditorium adjoining. There is a double garage on the premises. It had been erected by a church for temporary use while the church building was being finished. The living quarters in the bungalow are rented as is the garage. There is a kitchen in connection with the auditorium. Several works of art, including paintings and statuary which have been given to the Club, are located in the club rooms. The auditorium is rented from time to time to various other clubs and organizations for meetings. It contains approximately a dozen card tables which are used principally as eating tables although other organizations leasing the property sometimes use them for card parties and bridge games. The kitchen facilities are available to lessees of the club rooms but no attempt is made by the Club to serve any meals or refreshments except at its own meetings. The members buy all the food, help prepare it and do all the serving. On these occasions a maid comes in to help prepare the meals and to clean the club room and kitchen. Because of the location of the Club and the lack of eating places nearby plans were made to serve a light luncheon after the meeting for the convenience of *158 those members who came from outlying parts of the Los Angeles suburban area. The luncheon meal is a very simple affair and the price is set at an amount to cover the actual costs, it is not intended to make a profit. Some members do not stay for the luncheon and it is not a part of the meeting. The Club year is from October to May and weekly programs for the entire year are arranged in advance by the program committee. When a general course of study has been selected by the members, the committee prepares a year book outlining the year's program and makes all arrangements for the lectures. These programs are serious affairs and the subjects for discussion and review are studies of the arts and literature of different countries. A typical year's program is illustrated by the year book for the 1938-1939, in which the following topics are listed: Racial and Cultural Sources of the Arts in the United States
The Literary Background of the Constitution Early American Arts and Crafts The Restoration at Williamsburg
Growth and Development of the Theater in the United States
The Music of the North American Indian Early Portraiture Our Twentieth Century Poets Landscape Artists
*159 The Music of the American Negro The American Development of the Short Story Books which bring Science to the Everyday Man Three Thousand Years of the Theater Three Centuries of Sculpture Songs of Yesterday and Today; a Musical Panorama American Glass Pottery and China The American Scene Reflected in Fiction Print Makers and Other Groups Our National Capitol as an Art Shrine Some Notable Art Foundations Magazines and Periodicals, Past and Present Criticism in the United States, Its Function and Status Art Centers in Southern California
Our Modern Drama Some Aspects of Biography Notable Biographies of Recent Years Present-Day Trends in American Art
Music in Everyday Life Year books for other years, both prior and succeeding, show similar subjects. A leader is selected for each meeting and topics are assigned by the leader to various Club members who prepare talks and otherwise develop them for discussion at a specific meeting. Meetings start at 10 a.m. and last until 12 or 12:30 p.m. A particular meeting is conducted by the chairman for that day in charge of the program. Occasionally literary or artistic celebrities address the Club. Usually *160 they donate their services but, if not, any fee or charge is paid by the member arranging the talk. A guest speaker generally discusses his personal experiences or reports on his travels or studies in a country in which the members are interested. Others report on their efforts in any literary or artistic field. An annual feature is a book review conlucted by someone associated with the Los Angeles County Library. Announcements of each meeting and the subject for discussion are published in the Los Angeles Times. Members are permitted to bring guests and approximately 35 members and guests attend these weekly meetings. The public generally is not interested because of the serious nature of the topics and subjects under discussion. In addition to the weekly meetings there are occasional social functions whose main purpose is to acquaint prospective members and new members with the Club, its purposes and attractions, and the other members. There are no other social activities. About 20 years ago three different bridge parties were arranged in an effort to raise funds but they were not successful and were abandoned for lack of interest. On at least one occasion the Club sponsored a *161 "white elephant" sale to raise funds. Each member donated some artistic work which was sold at a special sale and the proceeds given to the Club. Many years ago the Club sponsored art exhibits but since the Museum was erected these exhibits have been abandoned. No art contests have been held because of the lack of funds. There have been no scholarships for art students for the same reason. Until this gift was made the Club was in debt for the purchase of the club house and its income was used to pay interest on the debt, taxes, maintenance and other expenses. The Hector Alliot Memorial Library of Archaeology situated in Southwest Museum of Los Angeles was founded by the Club in memory of a member's husband. Students and the public use it frequently. The present membership of approximately 50 has not fluctuated in recent years but there are conscientious and consistent efforts made to interest new members in joining. The Club receipts are derived from the rentals of the garage, the apartment or bungalow and incidental rents of the club rooms, dues and gifts from embers. There is some revenue from the luncheons and from the sales. The revenue from the luncheon is only sufficient *162 to cover actual costs of the food and its preparation. Initiation fees are $10 but in recent years have been waived. Dues are $10 a year. Any deficit in the cost of operations is made up by gifts and assessments of the members. There are no shares or shareholders. No part of the net earnings inures to the benefit of any individual and no part of the activities of the Club are devoted to carrying on propaganda or attempting to influence legislation. The social features of the Ruskin Art Club were incidental and subordinate to its predominant purpose of providing a forum for discussion of art and literary subjects. The Ruskin Art Club is organized and operated for literary and educational purposes within the meaning of section 812 (d) of the Internal Revenue Code. Opinion In filing the estate tax return for the estate of George H. Wadleigh the executrices claimed as a deduction a bequest to the Ruskin Art Club of Los Angeles. The respondent disallowed this deduction. The notice of deficiency contained no reason for the disallowance but his counsel stated that the Club was not operated exclusively for religious, charitable, scientific, literary or educational *163 purposes within the meaning of section 812 (d) of the Internal Revenue Code. [1]
The parties are in agreement that the Ruskin Art Club meets at least 3 of the 4 requirements necessary to permit a deduction under this section. It is not operated for profit, no part of its earnings inures to the benefit of any individual, and it is not used to disseminate propaganda or to influence legislation. They disagree *164 over whether the Ruskin Art Club is operated exclusively for educational and literary purposes. Respondent contends that the Club's social features predominate and that therefore it is not operated exclusively for the purposes set forth in the statute. Petitioners argue that the social activities are a natural incident to organizations of this type and that the Club falls within the rule of George E. Turnure, 9 B.T.A. 871. We have set forth the material evidences in our findings of fact. It would serve no useful purpose to repeat it. However, we are impressed with certain features of the Club which have aided us in arriving at a decision. Programs printed by the Club in its yearly booklet setting forth the nature of the studies and the programs for the year demonstrate clearly that the artistic and literary topics studied by the members were of a different character than the usual topics of discussion found on the programs of the average ladies' club. We think that to enjoy any of the lectures described in the year books one would have to be a serious student and in any event one's interest in the subjects must be more than casual. We are also impressed with the scarcity *165 of social functions. In 20 years no bridge or card parties have been given. Two or three parties given for the purpose of raising funds had been failures due to the lack of interest on the part of the members. The weekly programs were not used as a prelude to a luncheon or card party, on the contrary, the testimony clearly shows that the meetings were adjourned before luncheon. Also we think it important that the weekly luncheons were an additional feature at an extra cost, that it was not a part of the meeting. Witnesses testified without contradiction that the luncheon was an extra service required because of the Club's location away from eating facilities and because many of the members came from the outlying suburban areas. Another important feature in this connection is the fact that the eating facilities and the luncheon were not used to make a profit for the Club. The meals were served at actual cost and the members took an active part in preparing and serving them. In most clubs the refectory and dining room are one of the chief sources of income and they are used to make a profit to absorb the loss on other club facilities. In this case the receipts from the luncheons were *166 extremely small. No attempt was made to operate a club dining room in the usual sense. The parties are not in agreement as to the status of the Hector Alliot Memorial Library. The by-laws state and we have found that it was founded by the Club. The testimony is not clear as to what its status was or how it was supported. The audit returns do not show any sums spent for that purpose. However, we are of the opinion that the Library of Archaeology is a part of the Club's activities and that its founding is evidence of the Club's educational and literary efforts. Respondent urges that the case of Women's University Club of Seattle v. Poe, 52 Fed. (2d) 447, and our decision in Estate of Ellen Battell Stoeckel, 2 T.C. 975, are controlling. We think they are distinguishable. In the Women's University Club case the plaintiff sought a refund of dues taxes contending that it was not a social club but an educational organization and not subject to the tax. The court found, "Of dual purpose, cultural and social, it suffices to say the evidence in both thereof have been zealously pursued with equal if alternating enthusiasm * * *." The case was decided in favor of *167 the collector for this reason. The social and cultural purposes were of equal importance. The Stoeckel case was decided in favor of the respondent because we found that the social features of the annual dinner were the main interest of the members and that its activities along cultural and educational lines during the year were negligible. The club life revolved around the annual dinner. In Alfred T. Davison, 21 B.T.A. 251, affirmed 60 Fed. (2d) 50, it was obvious that the social features of the society and its undergraduate affiliate were paramount. In the case before us the weekly program meetings were the principal attraction and the social events were used only to raise funds for the Club's operations and to acquaint prospective members with the Club's advantages. We do not think that the luncheons or the social functions are enough to counteract the effect of its educational and cultural activities. See The Cordon v. United States, 46 Fed. (2d) 719; James Irvine, 46 B.T.A. 246. Counsel for the respondent lays great stress on the questionnaire executed by the Club's treasurer in 1941 wherein she describes the activities of the *168 Club as "social." This questionnaire was admitted over objection of counsel for petitioners for whatever weight it might have in determining the status of the Ruskin Art Club. We have considered it as evidence in the same manner that we have considered the testimony of the witnesses. We do not think that this one word description of the Club's activities can overcome the testimony of the witnesses. Standing alone this instrument would be important, other evidence has caused it to lose its persuasiveness. Cf. Wiget v. Becker, 84 Fed. (2d) 706. Each of these cases must be decided on its own facts. We think the status of the Ruskin Art Club as an educational organization has been proven and we have found that it was organized and operated for literary and educational purposes within the meaning of section 812 (d) of the Internal Revenue Code. George E. Turnure, supra. It follows that the deduction for estate tax purposes should have been allowed. Decision will be entered under Rule 50. Footnotes
1. SEC. 812. NET ESTATE For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen of the United States by deducting from the value of the gross estate - * * * * *
(d) Transfers for Public, Charitable and Religious Uses. - The amount of all bequests, legacies, devises, or transfers, * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art * * *, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. * * *↩