MARTHA HUBBARD DAVIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34213.    Filed August 24, 1954.

*Wilson W. Wyatt, Esq.*, and *Edgar A. Zingman, Esq.*, for the petitioner.

*A. Robert Doll, Esq.*, and *John C. Calhoun, Esq.*, for the respondent.

---

OPINION.

BRUCE, *Judge:* The deficiency here arises upon respondent's disallowance of the deduction for gift tax purposes of the conveyance in trust of approximately $250,000 in securities for the benefit of a charitable foundation as not allowable under section 1004 (a) (2) (B), Internal Revenue Code of 1939.[1]   This action has been taken upon the ground that respondent has ruled the foundation as not tax exempt under section 101 (6), Internal Revenue Code of 1939, and has also ruled as not exempt under that section KWA which was the recipient of certain payments by the foundation under the terms of its articles of incorporation.

The gift in question was one to the trust, but as the duties of the trustees were merely to invest the corpus, collect the income, and pay it over to the foundation, respondent holds that the gift was in substance for the use and benefit of the foundation and consequently its status for tax purposes is to be determined by the status of the foundation under section 101 (6). With this we agree. It is further contended by respondent that the status of the foundation under 101 (6) is to be determined by the status under that section of KWA upon the ground, as contended by him, that the foundation was designed merely as a producer of income or a feeder for purposes of KWA and consequently must be considered as established merely for the benefit of the latter organization.   With this latter premise we do not agree.

It is true that by the articles óf incorporation of the foundation a certain limited amount of its income was to be paid over to KWA to be used by the latter for a definite and fixed purpose. These payments were for a limited time specified in the articles of incorporation,

---

[1] SEC. 1004.' DEDUCTIONS.

In computing net gifts for the calendar year 1942 and preceding calendar years, there shall be allowed (except as otherwise provided in paragraph (1) of subsection (a)) such deductions as are provided for under the gift tax laws applicable to the years in which the gifts were made.

In computing net gifts for the calendar year 1943 and subsequent calendar years, there shall be allowed as deductions :

　(a) RESIDENTS.—In the case of a citizen or resident—

　　*　　　*　　　*　　　*　　　*　　　*　　　*

　　(2) CHARITABLE, ETC., GIFTS.—The amount of all gifts made during such year to or for the use of—

　　　*　　　*　　　*　　　*　　　*　　　*　　　*

　　(B) a corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals ; no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. For disallowance of certain charitable, etc., deductions otherwise allowable under this subparagraph, see sections 3813 and 162 (g) (2) ;

whereas the foundation had perpetual life. We can see nothing unusual or carrying the slightest indication of an attempt to carry on propaganda, or otherwise attempt, to influence legislation in this provision. Under the facts disclosed it is quite evident that the selection of KWA by the foundation in carrying out its purely charitable purposes was in the exercise of careful judgment and prudence. KWA was a statewide organization operating through its district committees all through the rural sections of the State and in close touch with the conditions there existing and the various needs for relief on the part of those whom the foundation was intended to assist. It was ideally suited as the investigative agent of the foundation in determining the worthwhile projects to which the trustees of the foundation would later make grants of relief. It was intended and the purpose was clearly understood that the payments by the foundation to KWA were only in the amount necessary and for the purpose of providing the expenses of an executive secretary to keep in contact with the various district committees by visiting them and instructing them in methods of procedure to meet local conditions of distress. We cannot conceive how it can be deemed that a payment for such purpose would be carrying on propaganda, or otherwise attempting, to influence legislation.

In this connection, it is noted that respondent by a very recent ruling, Rev. Rul. 54–243, 1954–1 C. B. 92, holds that an organization exempt from tax but not entitled to such exemption under section 101 (6) may accept contributions, deductible by the donors, if given for use exclusively for one of its purely charitable purposes, where action is taken by the recipient to guarantee their use for the specified purposes. It appears to us that the reasoning underlying this ruling is that reality must govern and deductibility be determined by the purpose for which the contribution is made and the use to which it is actually devoted.

We have no hesitation in concluding that the provisions of the articles of incorporation of the foundation in providing for payment to KWA for this special purpose could not support a determination that the foundation was thereby engaged in carrying on propaganda, or otherwise attempting, to influence legislation.

In view of the fact that respondent's contention is that the status of the foundation is to be determined by that of KWA, we have carefully examined the very voluminous record with reference to the activities of that organization.

It is perfectly true that during 1947 and 1948 one out of 18 committees of KWA known as the legislative committee, did take certain action with respect to legislation. All of this was in respect to legislation having to do with social service problems in the State. KWA appears to have had no interest whatever or been active in any way

with respect to other political questions, parties, or candidates for election. These activities by the legislative committee of KWA which might be termed political were purely incident to its main and controlling purpose and activity which was unquestionably purely charitable and educational. They also appear to us to have constituted but a very small part of the general activities of the organization as a whole. It appears to us that respondent has reached his conclusion as to KWA after considering the activities of this 1 committee alone without regard to the activities of the remaining 17 committees of KWA working upon problems over the entire State and maintaining and building up its organization in furtherance of its charitable purposes.

Section 1004 (a) (2) (B) does not deny exemption because of *any* legislative activity but only in cases where it constitutes a *substantial part* of otherwise charitable activities. The question is always one of fact to be determined upon the record of purely charitable activities and activities influencing legislation and a comparison of the two. Under such conditions the decisions of the courts in other cases are of little value. However, the courts have recognized a distinction between political activities of a general character and those engaged in as a necessary incident of the carrying out of the purely charitable, educational, or religious purposes of the organization. Respondent has himself recognized this distinction. In GCM 3830, VII–1 C. B. 114, he ruled tax exempt and contributions to it deductible by the donors, an organization formed for the purpose of securing for the American Indian just treatment from the Government and promoting his welfare. In so ruling he states:

No doubt some of the activities of the association are directed toward securing legislation beneficial to the Indians or toward defeating legislation deemed inimical to their best interest. However, it should be borne in mind that the restricted Indian is a ward of the Government and all that concerns his property and person, is in a peculiar sense subject to legislative control and direction. For this reason the improvement of the condition of the Indians is in a large measure dependent upon securing the enactment of wise and beneficent legislation, based upon a thorough understanding of the condition and needs of the Indians. Any activities in this direction must, in the case of restricted Indians, be carried on through an agency of the character of the one here in question, for the reason that the restricted Indians are without funds or without authority to use their funds for such a purpose. Since differences of opinion exist upon the question of what legislation is for the best interests of the Indians, the activities of the association in attempting to secure legislation deemed beneficial to the Indians or in opposing legislation deemed inimical to their best interests might, under different circumstances, properly be considered controversial in character. However, for the reasons stated it is believed that the status of the restricted Indians in the United States renders such activities an essential part of any work having for its purpose the betterment of the conditions of such Indians, and, therefore, that these activities may properly be considered as necessarily incidental to the charitable or educational activities of this association.

Certainly the interest of the State of Kentucky in the health and welfare of its underprivileged citizens is not less than that of the Federal Government in the interests of the American Indian.

In *Slee* v. *Commissioner*, 42 F. 2d 184, the Court of Appeals for the Second Circuit affirmed a decision by this Court, then the United States Board of Tax Appeals, in denying deduction of contributions to the American Birth Control League where one of the specific purposes of the league, as stated in its articles of incorporation, was "to enlist the support \* \* \* of \* \* \* legislators to effect the lawful repeal \* \* \*" of existing laws respecting birth control. In holding that this purpose was inconsistent with one "exclusively charitable," Judge Learned Hand stated the rule as follows:

Political agitation as such is outside the statute, however innocent the aim, though it adds nothing to dub it "propaganda," a polemical word used to decry the publicity of the other side. Controversies of that sort must be conducted without public subvention; the Treasury stands aside from them. Nevertheless, there are many charitable, literary and scientific ventures that as an incident to their success require changes in the law. A charity may need a special charter allowing it to receive larger gifts than the general laws allow. It would be strained to say that for this reason it became less exclusively charitable, though much might have to be done to convince legislators. A society to prevent cruelty to children, or animals, needs the positive support of law to accomplish its ends. It must have power to coerce parents and owners, and it does not lose its character when it seeks to strengthen its arm. A state university is constantly trying to get appropriations from the Legislature; for all that, it seems to us still an exclusively educational institution. No less so if, for instance, in Tennessee it tries to get leave to teach evolutionary biology. We should not think that a society of booklovers or scientists was less "literary" or "scientific," if it took part in agitation to relax the taboos upon works of dubious propriety, or to put scientific instruments upon the free lists. All such activities are mediate to the primary purpose, and would not, we should think, unclass the promotors. The agitation is ancillary to the end in chief, which remains the exclusive purpose of the association. *Trinidad* v. *Sagrada Orden*, 263 U. S. 578, 44 S. Ct. 204, 68 L. Ed. 458.

See also *Huntington National Bank*, 13 T. C. 760, 769; *Girard Trust Co.* v. *Commissioner*, 122 F. 2d 108; *Old Colony Trust Co.* v. *Welch*, 25 F. Supp. 45.

It is undoubtedly true that the purely charitable work done by KWA throughout the counties of Kentucky would normally result in bringing to the attention of the individual citizens the need for many things, some of which could be remedied by local means and others which perhaps would require legislation by the State. The information acquired by the public from this work would normally tend to have some effect in the actions of the State legislators, elected by the people, to enact relief legislation. Merely because some ultimate effect from this charitable work was realized in legislation providing for child welfare, mental health, sanitation, or other matters in improvement of social conditions in the State does not characterize

such charitable work as carrying on propaganda, or otherwise attempting, to influence legislation.

Our finding that no substantial part of the activities of the foundation or of KWA in 1947 and 1948 was in carrying on propaganda, or otherwise attempting, to influence legislation disposes of the issue. The action of respondent is reversed.

*Decision will be entered for the petitioner.*