DAVID W. CARSON AND MARJORIE E. CARSON, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9638–74.     Filed November 22, 1978.

*Scott I. Asner,* for the petitioners.
*George T. Morse III,* for the respondent.

WILBUR, *Judge:* Respondent determined the following deficiencies in, and additions to, the Federal gift taxes of petitioners:

| Petitioner | Taxable period ended | Deficiency | Additions to tax under sec. 6651(a)[1] |
|---|---|---|---|
| David W. Carson | 12/31/67 | $314.92 | --- |
| | 12/31/68 | 821.45 | --- |
| | 12/31/70 | 1,088.24 | --- |
| | 3/31/71 | 2,606.32 | --- |
| | 6/30/71 | 974.11 | --- |
| | 9/30/71 | 338.36 | --- |
| | 12/31/71 | 93.75 | --- |

[1]Unless otherwise stated, all section references herein are to the Internal Revenue Code of 1954, as amended and in effect during the taxable periods in question.

| | | | |
|---|---|---|---|
| Marjorie E. Carson..... | 12/31/67 | $314.92 | $78.73 |
| | 12/31/68 | 821.45 | 205.36 |
| | 12/31/70 | 1,088.24 | --- |
| | 3/31/71 | 2,606.32 | --- |
| | 6/30/71 | 974.11 | --- |
| | 9/30/71 | 338.36 | --- |
| | 12/31/71 | 93.75 | --- |

The sole issue we must decide in this case is whether expenditures made by petitioners to finance the election campaigns of various individuals for public office constitute transfers taxable as gifts.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners David W. Carson and Marjorie E. Carson[3] are husband and wife who resided in Kansas City, Kans., at the time their petition was filed. Petitioner David W. Carson has been engaged in the private practice of law in Kansas City, Kans., since 1937.

During the calendar year 1967, petitioner established a Wyandotte County Campaign Fund at Guaranty State Bank, Kansas City, Kans., to which he transferred $83,654. These funds were disbursed during 1967 solely at petitioner's direction and control for the sole purpose of paying political campaign expenses for various local candidates.

During 1968, petitioner transferred $8,000 to the Chipman for Attorney General Campaign. These funds were disbursed solely at petitioner's direction and control for the sole purpose of paying campaign expenses. Also during 1968, petitioner expended $21,745.97 for advertising and postage expenses of the Chipman for Attorney General Campaign. These expenses were incurred and the funds disbursed at the direction of petitioner.

---

[2]Taxpayers' claims that the deficiencies are barred by the statute of limitations are plainly without merit, and appear to have been abandoned on brief. In any event, our decision on the principal issue dispenses with the need to address either this issue or the addition to tax asserted against petitioner Marjorie E. Carson.

[3]The deficiencies asserted against Marjorie E. Carson are the consequence of the "splitting" of transfers actually made by her husband David W. Carson. See sec. 2513(a), under which a transfer is considered as made one-half by each spouse under certain conditions. Accordingly, we will refer to David W. Carson as the petitioner.

During 1970, petitioner transferred $19,000 to the General Campaign Fund of Bouska for Attorney General, and $14,059 to the General Campaign Fund of Frizzell for Governor.

During the calendar quarter ending March 31, 1971, petitioner transferred $40,404.04 to the Neath for Mayor Campaign. These funds were disbursed solely at petitioner's direction and control for the sole purpose of paying campaign expenses.

During the calendar quarter ending March 31, 1971, petitioner transferred $7,000 to the Matson for Commissioner of Finance Campaign. These funds were disbursed solely at petitioner's direction and control for the sole purpose of paying campaign expenses.

During the calendar quarter ending June 30, 1971, petitioner expended $9,000 for advertising and postage expenses of the Neath for Mayor Campaign. These expenses were incurred and the funds disbursed at the direction of petitioner.

During the calendar quarter ending June 30, 1971, petitioner transferred $2,000 to the Matson for Commissioner of Finance Campaign. These funds were disbursed solely at petitioner's direction and control for the sole purpose of paying campaign expenses.

During the calendar quarter ending September 30, 1971, petitioner expended $3,609.24 for advertising and postage expenses of the Matson for Commissioner of Finance Campaign. These expenses were incurred at the direction of petitioner.

During the calendar quarter ending December 31, 1971, petitioner expended $1,000 for advertising and postage expenses of the Matson for Commissioner of Finance Campaign. These expenses were incurred and the funds disbursed at the direction of petitioner.

All funds transferred or expended by petitioner for the taxable periods involved herein relate to local political offices in Kansas City, Kans., except the campaigns of Chipman for Attorney General, Bouska for Attorney General, and Frizzell for Governor.[4]

The transfers, expenditures, and disbursements described

_____

[4]Petitioner made the following additional transfers that are not in issue due to the annual exclusions available to petitioner and his wife for split gifts (see sec. 2503(b)): $4,026 transferred in 1970 to the general campaign fund of W. R. Burns for assessor; $5,500 transferred in 1971 to the general campaign fund of the William Braddish campaign; and $5,300 transferred in 1971 to the Institute for Motivational Sciences for the sole purpose of paying campaign expenses.

above, which serve as the basis for the deficiencies asserted by respondent, are summarized in the following table. The recipient listed represents the particular candidate benefiting from the expenditure.

| Taxable period ending | Recipient | Amount |
|---|---|---|
| 12/31/67 | Wyandotte County Campaign Fund (to benefit various local candidates) | $83,654.00 |
| 12/31/68 | Chipman for Attorney General Campaign | $8,000.00 |
| 12/31/68 | Chipman for Attorney General (advertising and postage expenses) | 21,745.97 |
| 12/31/70 | General Campaign Fund of Bouska for Attorney General | 19,000.00 |
| 12/31/70 | General Campaign Fund of Frizzell for Governor | 14,059.00 |
| 3/31/71 | Neath for Mayor Campaign | 40,404.04 |
| 3/31/71 | Matson for Commissioner of Finance Campaign | 7,000.00 |
| 6/30/71 | Neath for Mayor Campaign (advertising and postage expense) | 9,000.00 |
| 6/30/71 | Matson for Commissioner of Finance Campaign | 2,000.00 |
| 9/30/71 | Matson for Commissioner of Finance | 3,609.24 |
| 12/31/71 | Matson for Commissioner of Finance (advertising and postage expense) | 1,000.00 |

All of the amounts summarized above (with the exception of the amounts relating to Bouska for attorney general and Frizzell for Governor) involved disbursements solely at petitioner David W. Carson's direction and control for the sole purpose of paying campaign expenses. The disbursements would typically involve expenses for stationery, stamps, and printing to send out

mailers, letters, or brochures, and sometimes involved employment of public relations people to do the art work or put the ideas advanced in the most presentable form. Additionally, disbursements were made for the purchase of radio time, television time, and advertisements in newspapers.

Petitioner owned property in a number of counties in Kansas, including Leavenworth, Wyandotte, Finney, Kearny, Grant, Stevens, Haskell, and Greenwood. Some of the property was used in the production of oil and gas, while other property was agricultural property in the process of being made irrigable. Petitioner was concerned about an oil depletion tax being imposed, and also was apprehensive that the State might impose water table levels in western Kansas generally conflicting with his irrigation efforts. Petitioner also owned a large stock interest in a bank in Kansas City, Kans.

After participating in prior campaigns for mayor, petitioner's law firm was employed to litigate the constitutionality of an urban renewal statute that led to their representation of the Kansas City Urban Renewal Agency for a 9-year period. His firm was also employed by the city as professional counsel in annexation procedures of the Fairfax industrial district into Kansas City, Kans. Additionally, based on petitioner's prior experience, he anticipated that his participation in the campaigns would result in referral of legal business of a general nature by the people that he met during the course of the campaign as well as individuals he assisted.

While petitioner knew the individuals he supported personally, he knew only Mr. Matson well. All of the candidates, other than Mr. Matson and Mr. Neath, were attorneys. Mr. Matson and Mr. Neath were the only candidates petitioner supported for whom he had done legal work.

Petitioner selected the candidates he would support by singling out those he thought would be the most compatible with the advancement of his property interests and would be the best for the business of his law firm.

Petitioner filed original Federal gift tax returns for the calendar years 1967 and 1968 on April 12, 1969, and returns for all other periods involved on May 23, 1974. On none of these returns were any of the amounts expended for or contributed to various political candidates by petitioner reported as taxable

gifts. Marjorie E. Carson filed original Federal gift tax returns for all of the taxable periods involved herein on May 23, 1974.

A statutory notice of deficiency pertaining to the taxable periods involved herein was mailed to each petitioner on September 16, 1974. Respondent determined that the transfers by David E. Carson to and for the benefit of election campaigns of various individuals for public office constituted taxable gifts, and asserted deficiencies totaling $5,237.15 against each petitioner. Respondent further determined that Marjorie E. Carson's failure to timely file Federal gift tax returns for the years 1967 and 1968 was not shown to be due to reasonable cause within the meaning of section 6651(a), resulting in additions to tax in the amount of $284.09.

OPINION

The only issue before us is whether the funds petitioner expended directly or contributed to campaign committees on behalf of candidates for State and local offices are taxable gifts within the purview of section 2501.[5]

Section 2501 imposes an excise tax upon "the transfer of property by gift." The tax applies whether the transfer is direct or indirect, and whether the property is real or personal, tangible or intangible. Sec. 2511(a). Where property is transferred for less than an adequate and full consideration, in money or money's worth, the amount by which the value of the property transferred exceeds the value of the consideration received is deemed a gift subject to the tax. Sec. 2512(b).

Respondent argues that petitioner transferred funds for the benefit of political candidates, and received no consideration reducible to money or money's worth. Petitioner contends that an examination of the purpose and history of the gift tax compels the conclusion that it was never intended to and does not encompass political contributions. We agree with petitioner.

We begin by emphasizing that we do not face circumstances where the relationship between the contributor and candidate, familial or otherwise, suggests that the political candidate is also the natural object of the donor's bounty. In such a case, careful

---

[5]We note that Congress has (as to transfers *after* May 7, 1974) made the gift tax inapplicable to transfers to political organizations. Sec. 2501(a)(5). Since sec. 2501(a)(5) is not applicable herein, we need not speculate about whether the definition of a political organization is broad enough to encompass all of the expenditures petitioner made.

scrutiny of all the facts and circumstances may require a different conclusion.

We continue by recapitulating the key facts before us in order to carefully circumscribe the parameters of our holding. It is undisputed that we are considering run-of-the-mill campaign contributions (although in some instances relatively large ones). The largest portion of petitioner's support was on behalf of candidates for local office in Kansas City, Kans. Petitioner's support for local candidates was through the direct payment of campaign expenses for the printing and distribution of campaign literature, for advertising, and for media access. Funds for local candidates were disbursed only at petitioner's direction and under his control.

Petitioner also contributed significant amounts to the campaign funds of candidates for the State offices of attorney general and Governor. Some of the money expended on behalf of the candidates for State offices was incurred and disbursed at the direction of petitioner, while other funds were simply transferred to the general campaign fund of the candidate involved.[6] Petitioner was well acquainted with only one of the candidates he supported.

These facts do not suggest a gift to the candidate, but the use of petitioner's resources to promote the social framework petitioner considered most auspicious to the attainment of his objectives in life. Petitioner focused on the social structure most conducive to his economic aspirations; others may focus on a social structure advancing their own notions of social justice, or conditions they deem essential for world peace or public order. In either case, in the particular circumstances before us, the individual candidate may generally be viewed, for purposes of the gift tax, as the means to the ends of the contributor.

This characterization is consistent with the position respondent has historically taken in a series of revenue rulings concerning the taxability of the candidate on campaign contributions. Rev. Proc. 68–19, 1968–1 C.B. 810, 811 (1968), provides:

> Political funds are not taxable to the political candidate by or for whom they are collected if they are used for expenses of a political campaign or some similar purpose. However, any amount diverted from the channel of campaign

---

[6]Whether taxpayers support a candidate by paying various campaign expenditures on his or her behalf, or achieve the same result (possibly more efficiently) via contributions to funds managed by political campaign professionals is, in applying the gift tax, hardly a critical distinction.

activity and used by the political candidate for any personal purpose is income taxable to such candidate for the year in which the funds are so diverted. * * *

* * * * * * *

The expenditure of political funds by a political candidate for other than campaign or similar purposes will be considered a diversion of such funds requiring the funds so expended to be included in his income. * * *

The language of the ruling makes it clear that respondent recognizes campaign contributions are intended to advance the campaign, not personally benefit the candidate. Indeed, the ruling "[presumes] in the absence of evidence to the contrary that contributions to a political candidate are political funds which are not intended for the unrestricted personal use of such recipient." Rev. Proc. 68–19, *supra*, 1968–1 C.B. at 811. We believe this accords with our interpretation of the nature of a campaign contribution. While there are marked differences in the use of the word gift in the income and gift tax laws, there is no basis for different characterizations of the factual nature of a campaign contribution.[7]

We note that the Internal Revenue Service administered the gift tax law consistent with this reading of the statute for more than one-third of a century. From 1924, when the gift tax was first enacted, until 1959, the Service issued no regulations or rulings indicating that campaign contributions were subject to the gift tax. It was not until 1959 that respondent issued a revenue ruling simply declaring, without the benefit of any analysis, that campaign contributions are subject to the gift tax. (See Rev. Rul. 59–57, 1959–1 C.B. 626; see also Technical Information Release 1125, Dec. 17, 1971; Rev. Rul. 72–355, 1972–2 C.B. 532.)[8] The absence of any decided cases on the point

---

[7]See W. Lehrfeld, "The Gift Tax Implications of Political Contributions," 54 A.B.A.J. 1033 (1968), stating:

"By implication, however, the income tax rulings discussed above indicate that a political contribution in the ordinary sense—that is, one clearly not an outright personal gift to the candidate—contains nongift elements. If a donor makes a political contribution to the candidate for the expenses of a political campaign, and the candidate uses it for personal purposes, the implication of holding that there is taxable income to the candidate is that the political gift was not to the person or, if the gift was to the person, that it was in some measure in trust, incomplete or contingent until used for the purpose for which it was intended. [W. Lehrfeld, 54 A.B.A.J. at 1038.]"

[8]In Rev. Rul. 72–355, 1972–2 C.B. 532, issued nearly half a century after enactment of the first gift tax, respondent quotes testimony given in 1956 by an assistant commissioner before a subcommittee of the Senate Rules Committee, stating that the Service considered the gift tax applicable to contributions to a political organization. We do not believe this requires any change in our review of the legislative history.

during this long period of time also demonstrates that the respondent was not administratively applying the gift tax to campaign contributions.[9]

Congress is peculiarly aware of and knowledgeable about political campaign contributions and their financing. Yet there is no evidence in the legislative record that it contemplated application of the gift tax to campaign contributions. And as noted, until quite recently, the Service took no action even suggesting it considered inter vivos gifts and campaign contributions as cognate concepts rather than two conceptually different phenomena. The only reasonable conclusion is that a settled position contrary to respondent's present interpretation prevailed from enactment of the first gift tax in 1924 until the end of the 1950's. In view of this history, we believe a change in this settled interpretation was inappropriate absent a change in the statute. See *Crown v. Commissioner*, 67 T.C. 1060 (1977), affd. 585 F.2d. 234 (7th Cir. 1977).

We find this long-settled interpretation consistent with the legislative history and purpose of the gift tax. The Supreme Court long ago explained that purpose as follows:

The gift tax was supplementary to the estate tax. The two are in *pari materia* and must be construed together. *Burnet v. Guggenheim, supra,* 286. An important, if not the main, purpose of the gift tax was to prevent or compensate for avoidance of death taxes by taxing the gifts of property *inter vivos* which, *but for the gifts, would be subject in its original or converted form to the tax laid upon transfers at death.* [*Estate of Sanford v. Commissioner,* 308 U.S. 39, 44 (1939). Emphasis added; fn. ref. omitted.] [10]

The development of the gift tax reinforces this conclusion. The gift tax in 1924 was adopted as a "corollary" or as supplemental to the estate tax. 65 Cong. Rec. 3119, 3120, 3122, 3172, 8095–8096 (1924) (remarks of Representative Green). See *Estate of Sanford v. Commissioner, supra* n. 2; R. Paul, Federal Estate and Gift Taxation, sec. 15.04, p. 963 (1942). The

---

[9]Respondent cites *DuPont v. United States,* 97 F. Supp. 944 (D. Del. 1951). That case involved a contribution to the National Economic Council, apparently under the mistaken assumption that it was an exempt charitable or educational organization. While the opinion contains dicta suggesting a political campaign contribution would be a taxable gift, that issue was clearly not the issue litigated by respondent. Since the issue presented, on the facts involved, did not concern the applicability of the gift tax to political campaign contributions, the case is distinguishable.

[10]See generally C. Lowndes, R. Kramer & J. McCord, Federal Estate and Gift Taxes, secs. 22.1–22.4, pp. 639–643 (3d ed. 1974).

committee reports on the 1924 Act make clear that the tax was designed—

to impose a tax which measurably approaches the estate tax which would have been payable on the donor's death had the gifts not been made and the property given had constituted his estate at his death. *The tax will reach gifts not reached, for one reason or another, by the estate tax.* [H. Rept. 708, 72d Cong., 1st Sess. (1932), 1939–1 (Part 2) C.B. 457, 477; S. Rept. 665, 72d Cong., 1st Sess. (1932), 1939–1 (Part 2) C.B. 496, 525. Emphasis added.]

In repealing the 1924 Act 2 years later, Congress established a conclusive presumption that gifts made within 2 years of death were made in contemplation of death and subject to the estate tax. For purposes of the estate tax, such gifts were conclusively presumed to be testamentary. After the presumption was declared unconstitutional (*Heiner v. Donnan*, 285 U.S. 312 (1932)), a gift tax was included in section 501 of the Revenue Act of 1932, 47 Stat. 169. In interpreting the 1932 Act and subsequent revenue laws, we have been advised by eminent authority that:

The thought in 1924 was to achieve a *"unified scheme of taxation of gifts whether made inter vivos or at death."* Every provision of the existing gift tax statute must be interpreted in the light of this fundamental purpose, which carried over in all its essential outlines to the 1932 gift tax. [R. Paul, Federal Estate and Gift Taxation, sec. 15.04, p. 963 (1942). Emphasis added; fn. refs. omitted.]

A rebuttable presumption that gifts within 3 years of death were testamentary (for purposes of the estate tax) was retained as a central feature of the law until 1976. The presumption provided a bridge joining the gift and estate taxes which, despite significant differences, shared a common purpose and direction. The unification of these taxes into one system of transfer taxes in 1976, while reducing the significance of the bridge, confirms the common purpose of the two taxes.[11]

This review of the legislative history of the gift tax clearly demonstrates that it was intended to backstop the estate tax—to impose a tax on inter vivos dispositions to beneficiaries under circumstances that (aside from the time of making the arrangements) are akin to dispositions generally made at death. We fail to see how a campaign contribution can be considered this type

---

[11]For a review of the history of the presumption and the background of present sec. 2035, see W. Peat, "The Constitutionality of New Section 2035: Is There Any Room For Doubt," 33 Tax L. Rev. 287 (1978).

of disposition. It is doubtful that testamentary campaign contributions are problems plaguing estate planners or clogging probate courts. The vicissitudes of politics make political candidates an unlikely object for a decedent to "settle" his estate on, and an aspiring politician planning to finance his political ascendancy on testamentary campaign contributions may not rise far or fast. A campaign contribution is simply not a transfer that avoids the death tax, or property that, but for the transfer "would be subject in its *original* or *converted form* to the tax laid upon transfers at death."[12]

Respondent nevertheless contends that the statute itself is very broad, providing that "any transfer for less than an adequate and full consideration in money or money's worth" shall be "deemed a gift." But words do not have an immutable meaning without regard to the purpose and circumstances attending their usage. As the Supreme Court stated long ago:

It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act. [*Holy Trinity Church v. United States*, 143 U.S. 457, 459 (1892).][13]

The present case is an example of circumstances that may be within the letter of the statute, but only by a literal reading at war with its purpose and history. Indeed, in reenacting the gift tax in 1932, Congress stated it intended the tax to apply when

---

[12]It may be answered that even extremely unlikely events occasionally occur in this world, and it is quite clear that a legacy to a campaign fund would form part of the taxable estate. In such an unlikely case, we concede that failing to apply the gift tax to political contributions creates a minor flaw in the symmetry of the estate and gift taxes. One is tempted to simply point out that this is the difference between the living and the dead, those who spend and those who bequeath. But the short answer is that in interpreting a difficult law, we choose the highly probable rather than the extremely improbable for our factual predicate.

[13]See also *United States v. American Trucking Associations, Inc.*, 310 U.S. 534, 543 (1940). Tax cases abound where these principles have been applied. *Corn Products Refining Co. v. Commissioner*, 350 U.S. 46 (1955); *Kimbell-Diamond Milling Co. v. Commissioner*, 14 T.C. 74 (1950), affd. per curiam 187 F.2d 718 (5th Cir. 1951), cert. denied 342 U.S. 827 (1951); *Gregory v. Helvering*, 293 U.S. 465 (1935); *Bongiovanni v. United States*, 470 F.2d 921, 924 (2d Cir. 1972); *Focht v. Commissioner*, 68 T.C. 223 (1977).

property "is donatively passed to or conferred upon another," explaining further:

Since the tax is designed to reach all transfers to the extent that they are *donative, and* to exclude any consideration not reducible to money or money's worth, it is provided in this section that where the transfer is made for less than an adequate and full consideration in money or money's worth, the excess in value of the property transferred over such consideration shall be deemed a gift. [H. Rept. 708, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 477–478. Emphasis added.]

In view of the language that follows the word "donative" (and the objective test being prescribed), Congress clearly did not use the word "donative" to refer to the intent required to make a common law gift. It apparently contemplated cases that, despite the literal words of the statute and considering all the facts and circumstances, were simply transfers foreign to the purpose of the statute.[14] This view is wholly consistent with the language of the regulations basing the tax on "the objective facts of the transfer and the circumstances under which it is made." Sec. 25.2511–1(g)(1), Gift Tax Regs.

We conclude by noting that the parties have discussed *Stern v. United States,* 436 F.2d 1327 (5th Cir. 1971), at some length. On facts not fairly distinguishable from those before us, the Fifth Circuit held the contributions were exempt from the gift tax under language in the regulations providing that "a sale, exchange, or other transfer of property made in the ordinary course of business * * * will be considered as made for an adequate and full consideration in money or money's worth." Sec. 25.2512–8, Gift Tax Regs. While the holding of the Fifth Circuit supports and is consistent with the result we reach herein, we prefer to rest our holding on the broader grounds that campaign contributions, like those before us, when considered in

---

[14]"That the general standard to be applied is an objective one does not mean that the gift tax should necessarily be applied to transactions between strangers if the donor is clearly hoping to benefit himself by the transfer and not an individual whom he has probably never met and might not particularly like. * * * [P. Faber, "Gift Tax Planning: The New Valuation Tables; Net Gifts; Political Gifts; and Other Problems," N.Y.U. 31st Inst. on Fed. Tax. 1217, 1249 (1973).]"

light of the history and purpose of the gift tax, are simply not "gifts" within the meaning of the gift tax law.

*Decision will be entered for the petitioner.*

Reviewed by the Court.

TANNENWALD, *J.*, concurring: I agree with the result reached by the majority. However, I would eschew the various arguments related to political support in order to attempt to achieve social or economic objectives of a taxpayer and protection and advancement of the taxpayer's property interests (see *Stern v. United States*, 436 F.2d 1327, 1330 (5th Cir. 1971)) or relating to inferences to be drawn from the legislative history of the estate and gift taxes. Rather, I would rest my position on the fact that, absent a familial or other personal relationship between a candidate and his benefactor, campaign activities of political candidates (with which political contributions or direct expenditures benefiting such activities are intertwined) are "an inextricable part of the election process—one of the most sensitive elements in the fabric of the democratic way of life." See *Nichols v. Commissioner*, 60 T.C. 236, 239 (1973), affd. per curiam 511 F.2d 618 (5th Cir. 1975), cert. denied 423 U.S. 912 (1975). See also *McDonald v. Commissioner*, 323 U.S. 57, 63 (1944); cf. *Carey v. Commissioner*, 56 T.C. 477 (1971), affd. per curiam 460 F.2d 1259 (4th Cir. 1972), cert. denied 409 U.S. 990 (1972). Such being the case, I would treat this case as falling within the philosophical ambit of the aforementioned cases and "stay our hand." See *Nichols v. Commissioner, supra* at 239. See also S. Rept. 93–1357, pp. 32–33 (1974), 1975–1 C.B. 517, 580–581; 120 Cong. Rec. 21,576, 21,796—21,797 (daily ed. Dec. 17, 1974); 120 Cong. Rec. 12,594, 12,596 (daily ed. Dec. 20, 1974).

RAUM and STERRETT, *JJ.*, agree with this concurring opinion.

HALL, *J.*, concurring: In most cases, including this one, political contributions proceed from the donor's desire to see his own views regarding political policy given effect. I do not believe any gift is usually involved for gift tax purposes because

there is rarely, if ever, a desire to benefit the donee in his personal capacity, but rather only a desire to further the donor's own political objectives through the candidate. Such an expenditure, given solely to be used in facilitating the propagation of views of political policy which resemble the donor's, is no more a gift to the recipient than is an expenditure for a newspaper advertisement a gift to the paper. In either case, the recipient is primarily viewed as a means for propagating the taxpayer's own views. I would not lay down as a matter of law that a political contribution may never be a gift. The question should be left open, for example, whether a father's substantial contribution to his son's candidacy might be a gift for gift tax purposes under certain circumstances. Here, however, no such facts are involved and no gift tax was due.

DRENNEN and GOFFE, *JJ.*, agree with this concurring opinion.

SIMPSON, *J.*, dissenting: I agree with the dissenting opinion of Judge Chabot in which he carefully develops and documents his reasons for holding that the political contributions at issue in this case should not be exempted from the gift tax. However, I wish to add and emphasize some additional reasons for dissenting in this case.

At the outset, I want to emphasize that we are not called upon to express our individual views as to whether political contributions should, or should not, be subject to the gift tax. As a court, it is our responsibility to take the law as enacted by the Congress, to ascertain the legislative purpose, and to apply the law so as to carry out such purpose. As Judge Chabot demonstrates, the terms of the gift tax statute are certainly broad enough to include gifts to political organizations, and there is no basis for this Court to conclude that the statute should not be applied as written. There is no legislative history indicating that contributions to political organizations were not to be subject to the gift tax, and as Judge Chabot's opinion shows convincingly, the reasons given by the majority for its conclusion are totally inconsistent with the precedents of this and other courts. Indeed, to exempt gifts to a political organization from the gift tax is inconsistent with the legislative

action in explicitly denying exemption of gifts to organizations which engage in lobbying or political activities.

Moreover, when the "pins and needles Act"[1] was before the Senate, Senator Stevenson offered an amendment which would strike section 14, relating to contributions to political organizations, from the act. He urged the Senate to adopt his amendment because he believed that such contributions should not be exempted from the gift tax. Senator Long opposed the amendment for several reasons, including his belief that Congress never intended to make such gifts subject to the gift tax. Senator Stevenson's amendment was rejected by a tie vote. 120 Cong. Rec. S21796–S21797 (daily ed. Dec. 17, 1974). Thus, there was not even a majority vote in the Senate in favor of the particular provision which prospectively exempted gifts to political parties subject to certain restrictions. In the light of this legislative history, there is surely no basis for saying that Congress clearly intended to exempt from the gift tax all contributions to political organizations.

Whether contributions to a political organization should be subject to the gift tax raises a question of policy to be decided by the Congress, not by this Court. Congress has decided that certain gifts made after May 7, 1974, are exempt but there are restrictions on the gifts that qualify for such exemption— restrictions that prevent the investment income of a political organization from avoiding tax, and restrictions to prevent the appreciation in value of contributed property from avoiding tax. If earlier gifts are to be exempt from the gift tax, then Congress should so provide, subject to such restrictions as it may decide are appropriate to carry out its tax policies. As a court, we cannot, and should not, make such policy decisions and decide under what conditions and limitations political contributions should be exempt from the gift tax.

QUEALY and CHABOT, *JJ.*, agree with this dissenting opinion.

CHABOT, *J.*, dissenting: The majority conclude that the transfers here at issue are not subject to tax under section

---

[1] For an explanation of this reference, see Judge Chabot's dissenting opinion below.

2501(a)(1),[1] even though the language of sections 2511(a)[2] and 2512(b)[3] literally encompasses these transfers.

The reasons presented in the majority opinion—

(1) Have the effect of repealing several provisions of the Internal Revenue Code;

(2) Are warranted by neither the Code, the legislative history, nor prior Court rulings; and

(3) Are likely to create unwarranted confusion for the future. Accordingly, I respectfully dissent.

The majority opinion (p. 258 *supra*) recapitulates "the key facts before us in order to carefully circumscribe the parameters of our holding." However, the majority do not simply reach a result on a state of facts. In response to the statute's command (sec. 7459(b)),[4] the majority set forth their reasons. If these reasons truly justify the result reached by the majority in this case, then

---

[1] For 1967, 1968, and 1970, the statute read as follows:

SEC. 2501. IMPOSITION OF TAX.

(a) TAXABLE TRANSFERS.—

(1) GENERAL RULE.—For the calendar year 1955 and each calendar year thereafter a tax, computed as provided in section 2502, is hereby imposed on the transfer of property by gift during such calendar year by any individual, resident or nonresident.

For 1971, the statute read as follows:

SEC. 2501. IMPOSITION OF TAX.

(a) TAXABLE TRANSFERS.—

(1) GENERAL RULE.—For the first calendar quarter of the calendar year 1971 and each calendar quarter thereafter a tax, computed as provided in section 2502, is hereby imposed on the transfer of property by gift during such calendar quarter by any individual, resident or nonresident.

[2] SEC. 2511. TRANSFERS IN GENERAL.

(a) SCOPE.—Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States.

[3] For 1967, 1968, and 1970, the statute read as follows:

SEC. 2512. VALUATION OF GIFTS.

(b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

For 1971, the statute read as follows:

SEC. 2512. VALUATION OF GIFTS.

(b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar quarter.

[4] SEC. 7459. REPORTS AND DECISIONS.

(b) INCLUSION OF FINDINGS OF FACT OR OPINIONS IN REPORT.—It shall be the duty of the Tax Court and of each division to include in its report upon any proceeding its findings of fact or opinion or memorandum opinion. The Tax Court shall report in writing all its findings of fact, opinions, and memorandum opinions.

the same result should obtain in other sets of facts to which these stated reasons have equal application.[5] For example, although the "key facts" are stated to include the fact that "the largest portion of petitioner's support was on behalf of candidates for local office in Kansas City, Kans.," we may safely assume that the majority would reach the same result if the largest portion of support was on behalf of candidates for State office in Maine or California.

Under these circumstances, it is necessary to examine the reasons set forth by the majority, and to weigh the consequences of acting in accordance with these reasons.

The majority opinion (p. 258 *supra*) sets forth standards for exclusion of transfers from the gift tax, as follows:

> These facts do not suggest a gift to the candidate, but the use of petitioner's resources to promote the social framework petitioner considered most auspicious to the attainment of his objectives in life. Petitioner focused on the social structure most conducive to his economic aspirations; others may focus on a social structure advancing their own notions of social justice, or conditions they deem essential for world peace or public order. In either case, in the particular circumstances before us, the individual candidate may generally be viewed, for purposes of the gift tax, as the means to the ends of the contributor.

## I. *Implied Repeal of Code Provisions*

The majority repeal (or at least make into surplusage) much of section 2522(a) of the Internal Revenue Code of 1954 and its predecessors, section 1004(a)(2) of the Internal Revenue Code of 1939, section 505(a)(2) of the Revenue Act of 1932, and section 321(a)(2) of the Revenue Act of 1924. The majority repeal the restrictive language added to these provisions by section 201(d)(4)(C) of the Tax Reform Act of 1969 and section 517(a) of the Revenue Act of 1934.

Section 2522(a)[6] provides for deductions from the gift tax in

---

[5]Surely some consistency is appropriate in judicial applications of the law. The Congress, the taxpaying public, and the executive branch should be able to rely on our stated reasoning, notwithstanding Emerson's strictures that—

"A foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines. With consistency a great soul has simply nothing to do. He may as well concern himself with his shadow on the wall. Speak what you think now in hard words and to-morrow speak what to-morrow thinks in hard words again, though it contradict every thing you said to-day. [R. W. Emerson, Self Reliance 21 (Peter Pauper Press 1967).]"

[6]For 1967 and 1968, the statute read as follows:

the case of "charitable" gifts. (Section 2522(b) provides similar rules as to gifts by nonresident aliens.) The charitable gift

---

SEC. 2522. CHARITABLE AND SIMILAR GIFTS.

(a) CITIZENS OR RESIDENTS.—In computing taxable gifts for the calendar year, there shall be allowed as a deduction in the case of a citizen or resident the amount of all gifts made during such year to or for the use of—

(1) the United States, any State, Territory, or any political subdivision thereof, or the District of Columbia, *for exclusively public purposes;*

(2) a corporation, or trust, or community chest, fund, or foundation, organized and operated *exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals,* no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; ·

(3) a fraternal society, order, or association, operating under the lodge system, but only if such gifts are to be used *exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals;*

(4) posts or organizations of war veterans, or auxiliary units or societies of any such posts or organizations, if such posts, organizations, units, or societies are organized in the United States or any of its possessions, and if no part of their net earnings inures to the benefit of any private shareholder or individual.

[Emphasis supplied.]

For 1970, the statute read as follows:

SEC. 2522. CHARITABLE AND SIMILAR GIFTS.

(a) CITIZENS OR RESIDENTS.—In computing taxable gifts for the calendar year, there shall be allowed as a deduction in the case of a citizen or resident the amount of all gifts made during such year to or for the use of—

(1) the United States, any State, Territory, or any political subdivision thereof, or the District of Columbia, *for exclusively public purposes;*

(2) a corporation, or trust, or community chest, fund, or foundation, organized and operated *exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals,* no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office;

(3) a fraternal society, order, or association, operating under the lodge system, but only if such gifts are to be used *exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals;*

(4) posts or organizations of war veterans, or auxiliary units or societies of any such posts or organizations, if such posts, organizations, units, or societies are organized in the United States or any of its possessions, and if no part of their net earnings inures to the benefit of any private shareholder or individual.

[Emphasis supplied.]

For 1971, the statute read as follows:

SEC. 2522. CHARITABLE AND SIMILAR GIFTS.

(a) CITIZENS OR RESIDENTS.—In computing taxable gifts for the calendar quarter, there shall be allowed as a deduction in the case of a citizen or resident the amount of all gifts made during such quarter to or for the use of—

(1) the United States, any State, Territory, or any political subdivision thereof, or the District of Columbia, *for exclusively public purposes;*

(2) a corporation, or trust, or community chest, fund, or foundation, organized and operated *exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals,* no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part

deduction also was provided by section 321(a)(2) of the Revenue Act of 1924, section 505(a)(2) of the Revenue Act of 1932, and section 1004(a)(2) of the Internal Revenue Code of 1939.

Analysis of these provisions indicates that, in substantially all cases, a transfer that would qualify for gift tax deduction as a charitable contribution to a governmental body, to a charitable organization, or to a fraternal organization, also would qualify under the majority opinion in the instant case as not being a gift. If a transfer does not constitute a gift, then it appears to be a useless act to provide for a deduction of the amount of the transfer. Consequently, it appears that the charitable contribution deduction provisions (at least, pars. (1), (2), and (3) of sec. 2522(a)) are impliedly repealed or made surplusage by the language of the majority opinion set forth above.

Since the majority opinion takes the position that this was the law from the start of the gift tax, it appears that the charitable gift tax deduction was surplusage at all times during the history of the gift tax, thus impliedly making surplusage the predecessors of section 2522(a), as well. (See *C. Blake McDowell, Inc. v. Commissioner,* 71 T.C. 71 (1978).) This is contrary to the "settled position" of the Court; a change in such a "settled position" may well be "inappropriate, absent a change in the statute."

In *M. D. Thatcher Estate Co. v. Commissioner,* 38 B.T.A. 336 (1938), the Board redetermined a deficiency in gift tax under the Revenue Act of 1924. In doing so, the Board focused on both section 319 of the 1924 Act (predecessor of section 2501) and section 321(a)(2) of the 1924 Act (predecessor of section 2522(a)). The Board concluded that a transfer for "civic and philanthropic uses" was deductible under the "charitable contribution" provisions in section 321(a)(2) of the 1924 Act. The Board thought it helpful, in arriving at its conclusion, to note (38 B.T.A. at 343) that—

of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office;

(3) a fraternal society, order, or association, operating under the lodge system, but only if such gifts are to be used *exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals;*

(4) posts or organizations of war veterans, or auxiliary units or societies of any such posts or organizations, if such posts, organizations, units, or societies are organized in the United States or any of its possessions, and if no part of their net earnings inures to the benefit of any private shareholder or individual.

[Emphasis supplied.]

In *Ould v. Washington Hospital, supra* [95 U.S. 303], a charitable use is defined as follows:

A charitable use, where neither law nor public policy forbids, may be applied to almost anything [sic] that tends to promote the well-doing and well-being of social mean [sic].

If the Board could have forecast the test set forth in the majority opinion, it would not have needed to consider section 321(a)(2) of the 1924 Act; it could have stated that a transfer for civic and philanthropic uses is a "use of [the donor's] resources to promote the social framework [those directing the donor] considered most auspicious to the attainment of [their] objectives in life." Those directing the donor "may focus on a social structure advancing their own notions of social justice, or conditions they deem essential for world peace or public order. In either case, in the particular circumstances before us, the [donee organization] may generally be viewed, for purposes of the gift tax, as the means to the ends of the contributor." The Board could have concluded that, therefore, the transfer was not a transfer by gift, within the meaning of section 319 of the 1924 Act.

Two years later, in *Faulkner v. Commissioner*, 41 B.T.A. 875 (1940), the Board (four members dissenting) sustained a determination by the respondent that a transfer by Mary duPont Faulkner to the Birth Control League of Massachusetts was subject to gift tax under the Revenue Act of 1932. The majority in that case concluded that the league's purposes included the influencing of legislation to such an extent that the league was not a permissible donee under section 505(a)(2)(B) of the Revenue Act of 1932 (predecessor of section 2522(a)(2)), as amended by section 517(a) of the Revenue Act of 1934. In a separate memorandum decision, the Board sustained a disallowance of an income tax deduction. The income tax case was appealed and reversed (112 F.2d 987 (1st Cir. 1940)), on the ground that the transfer was for the use of the Brookline Mothers' Health Office, which had an identity sufficiently separate from the league to be an eligible donee. Whereupon, the Board modified its earlier opinion in the gift tax case to allow the deduction (42 B.T.A. 1019). Under the teaching of the majority in the instant case, the Board should have ruled for Mrs. Faulkner in the gift tax case on first consideration, since it was clear that both the league and the health office were means

to the end of Mrs. Faulkner in improving the social structure to advance her notions of social justice. Such a transfer, the majority tell us, is not even a gift for gift tax purposes.

More recently, the Court struggled with these same questions, holding that section 1004(a)(2)(B) of the Internal Revenue Code of 1939 (predecessor of section 2522(a)(2)) permitted a gift tax deduction for a transfer for the use of the Kentucky Social Welfare Foundation (*Davis v. Commissioner*, 22 T.C. 1091 (1954)), but did not permit gift tax deductions for transfers to the Foundation for World Government (*Estate of Blaine v. Commissioner*, 22 T.C. 1195 (1954)). In *Blaine*, the donee organization was regarded by the respondent as exempt from income tax under section 101(8)[7] of the Internal Revenue Code of 1939 (predecessor of section 501(c)(4)), as a "social welfare" organization. The Court concluded that Mrs. Blaine's "dominant aim was to organize a foundation to assist in bringing about a world government as rapidly as possible." Under the standard enunciated in the majority opinion in the instant case, the Blaine transfers were not subject to the gift tax because, clearly, they were made to an organization that Mrs. Blaine viewed as the means to her end of advancing conditions she deemed "essential for world peace or public order."

Apart from the implied general repeal of the charitable gift provisions, the majority's approach effects an implied repeal of the amendment made by the Revenue Act of 1934, which provided that a charitable organization would no longer be a qualified donee under the gift tax deduction provision if a "substantial part of the activities of [the organization] is carrying on propaganda, or otherwise attempting, to influence legislation" (sec. 517, Pub. L. 73–216, 48 Stat. 760). Since it is clear that (under the standards set forth by the majority herein) attempting to influence legislation can cause a transfer to be excluded from the gift tax, there is no need to disqualify an organization as a charitable gift donee merely because of excessive lobbying. Indeed, if the transfer is to an organization which has lost its charitable status because of excessive

---

[7]SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.

The following organizations shall be exempt from taxation under this chapter—

(8) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes;

lobbying, it would appear that under the majority's approach that fact alone should be sufficient to make a prima facie case that the transfer is excludable from gift tax.

It is even more clear that the majority's approach impliedly repeals the amendment by the Tax Reform Act of 1969 which provides that a charitable organization loses its gift tax qualified donee status if it intervenes "in (including the publishing or distributing of statements) any political campaign on behalf of any candidate for public office" (sec. 201(d)(4)(C), Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 75). Indeed, the very transfers dealt with in the instant case are, and are intended to be, interventions in political campaigns on behalf of candidates for public office. It is obviously useless to disqualify an organization from being an eligible donee under the charitable gift-deduction provision merely because its activities are precisely the sort which justify a complete exclusion from the gift tax.[8]

## II. *No Authority in the Statute, Legislative History, or Prior Court Rulings*

### (A) The Statute

The Congress has provided *by statute* for a tax "on the transfer of property by gift" (sec. 2501(a)(1), set forth at n. 1 *supra*) and has instructed us by *statute* that "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration *shall be deemed a gift*, and *shall be included* in computing the amount of gifts made" (sec. 2512(b), set forth at n. 3 *supra*, emphasis supplied). The majority implicitly concede that the letter of the statute would impose the tax.

The statute, as in effect during the taxable periods before us, provided a number of exclusions and deductions as follows:

(1) Section 2501(a)(2) (relating to transfers of intangible property by nonresident aliens);

---

[8]It should be noted, in this respect, that the 1975 statute referred to in note 5 of the majority opinion (sec. 14, Pub. L. 93–625, 88 Stat. 2121) makes the gift tax inapplicable only in certain limited circumstances— "a transfer of money or other property to a political organization (within the meaning of section 527(e)(1)) for the use of such organization." Not all the transfers in the instant case appear to qualify as transfers to political organizations under the relatively narrow language of the 1975 Act. The 1975 Act is a far more narrowly drawn statute which does not impliedly repeal sec. 2522(a). The 1975 Act has an additional claim to legitimacy in that, unlike the majority opinion, the 1975 Act was enacted by the Congress.

(2) Section 2517(a) (relating to joint and survivor annuity elections under certain tax-qualified plans and certain other arrangements); and

(3) Section 2522 (relating to deductions for charitable and similar gifts).

In addition, the statute provided for annual per-donee exclusions (sec. 2503(b)) and lifetime deductions (sec. 2521).

The statute provided no exclusion or deduction for "political contributions," as the term is used by the majority herein, except to the extent that the majority's opinion encompasses section 2522, as described above. Indeed, for the taxable year 1970 and the taxable periods falling within 1971, the statute specifically provided (sec. 2522(a)(2), as amended by sec. 201(d)(4)(C), Tax Reform Act of 1969) that if a donee organization participates or intervenes in political campaigns on behalf of candidates for public office, then the donor cannot deduct gifts made to that otherwise eligible donee organization.

Thus, the statute does not authorize the exclusion which the majority would grant—indeed, the majority point to no authority in the language of the statute.

Instead, the majority rely upon a statement in the opinion of the Supreme Court in *Holy Trinity Church v. United States*, 143 U.S. 457, 459 (1892), for authority to depart from the language of the statute where it is "at war with its purpose and history."

As the analysis in part I of this dissent shows, the *deduction* for charitable gifts was part of the gift tax legislation when the gift tax was first enacted in 1924; it was part of the legislation when the gift tax was resurrected in 1932; and it has continued in essentially similar form until now. Litigation over the years has been founded on the assumption that transfers, of the sort that the majority now describe as not being subject to the tax, were transfers subject to the tax. That litigation focused on whether the transfers were deductible under the narrower rules of the charitable gift deduction. Under these circumstances, I would conclude that the majority's position is the one at war with the statute's purpose and history.

*(B) The Legislative History*

The majority focus on the expressed purpose of backstopping the estate tax, the requirement of "donative intent," and a published ruling which "makes it clear that respondent recog-

nizes campaign contributions are intended to advance the campaign, not personally benefit the candidate." P. 259 *supra.*

As to backstopping the estate tax, there are numerous estate tax cases involving bequests which, in the language of the majority, "focus on a social structure advancing [the decedent's] notions of social justice, or conditions [the decedent deemed] essential for world peace or public order." These cases have held such bequests are not deductible from a decedent's gross estate as transfers for public, charitable, or religious use under section 2055(a) or its predecessors.[9] And yet the majority are, by their holding, exempting transfers from the gift tax that if made at death are subject to the estate tax. Further, if we are to interpret the two transfer taxes in a similar manner, the majority's rationale could be extended to exempt "social framework" bequests from the estate tax as well. This would have the result of making parts of section 2055(a) surplusage.[10]

As to "donative intent," the Supreme Court has rejected the requirement of "donative intent" in favor of a broad and comprehensive definition of the term "gift." In *Commissioner v. Wemyss,* 324 U.S. 303, 306 (1945), the Court stated:

Had Congress taxed "gifts" *simpliciter,* it would be appropriate to assume that the term was used in its colloquial sense, and a search for "donative intent" would be indicated. But Congress intended to use the term "gifts" in its broadest and most comprehensive sense. * * * Congress chose not to require an ascertainment of what too often is an elusive state of mind. For purposes of the gift tax it not only dispensed with the test of "donative intent." It formulated a much more workable external test, that where "property is transferred for less than an adequate and full consideration in money or money's worth," the excess in such money value "shall, for the purpose of the tax imposed by this title, be deemed a gift * * * ." * * * [Citations omitted.]

Finally, as to whether personal benefit to the candidate is required, as distinguished from benefit to the campaign, it is not

---

[9]E.g., *Sharpe's Estate v. Commissioner,* 148 F.2d 179 (3d Cir. 1945), affg. 3 T.C. 612 (1944); *Marshall v. Commissioner,* 147 F.2d 75 (2d Cir. 1945), affg. 2 T.C. 1048 (1943), cert. denied 325 U.S. 872 (1945); *Leubuscher v. Commissioner,* 54 F.2d 998 (2d Cir. 1932), modifying 21 B.T.A. 1022 (1930); *Krohn v. United States,* 246 F. Supp. 341, 345–348 (D. Colo. 1965); *Hammerstein v. Kelley,* 235 F. Supp. 60, 64–65 (E.D. Mo. 1964), affd. 349 F.2d 928, 930 (8th Cir. 1965); *League of Women Voters of United States v. United States,* 180 F. Supp. 379 (Ct. Cl. 1960), cert. denied 364 U.S. 822 (1960).

[10]True, the majority concede that they are creating conflicts between the estate tax and the gift tax (p. 262 *supra*). However, the majority admit to such a conflict only in the case of "a legacy to a campaign fund." If the "social framework" standard established by the majority is the proper basis for deciding this case, and if that is so because that is necessary in order to backstop the estate tax, then the reader can reasonably conclude that the majority believe the "social framework" standard may also be the appropriate test for taxability under the estate tax.

necessary for taxability that the donee be benefited in any materialistic sense. Nor is it necessary for taxability that the transfer be directly to the donee, if the transfer benefits the donee. E.g., sec. 25.2511–1(h)(3), Gift Tax Regs.; *Skouras v. Commissioner*, 14 T.C. 523 (1950), affd. 188 F.2d 831 (2d Cir. 1951). Further, the fact that the donor benefits from the transfer in that it furthers his purposes does not mean the transfer is not a gift, as long as the donor is not receiving "consideration in money or money's worth." *Commissioner v. Wemyss, supra; Merrill v. Fahs*, 324 U.S. 308 (1945); *Estate of Hundley v. Commissioner*, 52 T.C. 495 (1969), affd. per curiam 435 F.2d 1311 (4th Cir. 1971); *Hrobon v. Commissioner*, 41 T.C. 476, 498–502 (1964).

In sum, the majority have combed the legislative history and have found nothing directly on point. From this, they conclude that the Congress did not intend to *subject* to the gift tax the transfers described in the majority's standards. However, the absence of statements directly on point could just as easily lead to the conclusion that the Congress did not intend to *exempt* such transfers from the tax. The important point here is that a clear legislative history is necessary if we are to depart from the Congress' enacted definition and statutory system of exclusions and deductions. Such clear expressions of intent have not been adduced by the majority. The legislative history does not support the majority's analysis.

## (C) Prior Court Rulings

The majority rely upon neither of the two court rulings most closely on point. The majority note that *Stern v. United States*, 436 F.2d 1327 (5th Cir. 1971), "supports and is consistent with the result we reach herein." However, the majority choose to rely on neither the authority nor the reasoning of *Stern*. Similarly, the majority note that *DuPont v. United States*, 97 F.Supp. 944 (D. Del. 1951), which reached the opposite conclusion, dealt specifically in dictum with transfers to political parties. The majority dismiss the *DuPont* case as distinguishable.[11]

---

[11]I agree that *DuPont* is distinguishable in that the transfers there at issue were not made to or on behalf of candidates for public office. However, that is not sufficient to protect *DuPont* from the far-reaching effect of the standards proclaimed by the majority herein. It is evident from the *DuPont* opinion that the transfers there were made to further the purposes of the donee organization " 'to preserve private enterprise, private property and private initiative and American independence.' " (97 F. Supp. at 946.) The donor sought to improve economic conditions in this country and considered that

The relevant cases of this Court dealing with transfers described in the majority's standard (*M. D. Thatcher Estate Co. v. Commissioner, supra; Faulkner v. Commissioner, supra; Davis v. Commissioner, supra; Estate of Blaine v. Commissioner, supra*) all conflict with the reasoning advanced by the majority.

## III. *Confusion for the Future*

*Firstly,* as the majority note in passing (n. 5 in the majority opinion), the Congress has acted in this area.

Section 14, Pub. L. 93–625, 88 Stat. 2121,[12] added paragraph (5) to section 2501(a), to read as follows:

> (5) TRANSFERS TO POLITICAL ORGANIZATIONS.— Paragraph (1) shall not apply to the transfer of money or other property to a political organization (within the meaning of section 527(e)(1)) for the use of such organization.

This amendment (enacted Jan. 3, 1975) applies to transfers made after May 7, 1974. The same act (sec. 10(a), 88 Stat. 2118) enacted section 527(e),[13] referred to in section 2501(a)(5).

The Congress has not otherwise modified section 2501 after the taxable periods before us, with respect to the transfers here at issue or transfers described in the majority's standards.

The question then arises as to whether the holding of this case applies to transfers made after May 7, 1974, or whether the holding is "good only for this train and this ride." Note in this connection that, in order to qualify under the "pins and needles

---

he had profited from the improvement "to a much greater extent than the amount of the transfer." (97 F. Supp. at 947.) Clearly, Mr. DuPont's purposes would make the transfers not taxable under the standards set forth in the majority opinion herein.

[12]This Act, which initially was passed by the House of Representatives as a tariff bill to allow duty-free imports of upholstery regulators, upholsterer's regulating needles, and upholsterer's pins, often is referred to as the "pins and needles Act."

[13]SEC. 527. POLITICAL ORGANIZATIONS.

(e) OTHER DEFINITIONS.—For purposes of this section—

(1) POLITICAL ORGANIZATION.—The term "political organization" means a party, committee, association, fund, or other organization (whether or not incorporated) organized and operated primarily for the purpose of directly or indirectly accepting contributions or making expenditures, or both, for an exempt function.

(2) EXEMPT FUNCTION.—The term "exempt function" means the function of influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any Federal, State, or local public office or office in a political organization, or the election of Presidential or Vice-Presidential electors, whether or not such individual or electors are selected, nominated, elected, or appointed.

(3) CONTRIBUTIONS.—The term "contributions" has the meaning given to such term by section 271(b)(2).

(4) EXPENDITURES.—The term "expenditures" has the meaning given to such term by section 271(b)(3).

Act" rule, the transfer must be made to a political organization and that "political organization" is a term defined in detail in the statute.

*Secondly,* if the majority's standard applies after the "pins and needles Act," the question arises as to the extent to which that standard repeals or makes into surplusage a number of provisions that have been enacted by the Congress, and the extent to which prior decisions of this Court have been implicitly overruled (e.g., *Estate of Blaine v. Commissioner, supra*) or made obsolete (e.g., *M. D. Thatcher Estate Co. v. Commissioner, supra; Faulkner v. Commissioner, supra; Davis v. Commissioner, supra*).

---

The majority do not rest their conclusion upon *Stern v. United States,* 436 F.2d 1327 (5th Cir. 1971), or section 25.2512–8, Gift Tax Regs., and have made no conclusory findings of fact which would compel the *Stern* result. Under these circumstances, it does not appear that it would be fruitful to examine, in dissent, what should be the effect of *Stern* on our decision in the instant case.

SIMPSON, *J.,* agrees with this dissenting opinion.