ESTATE OF MEYER B. BERKMAN, DECEASED, BARBARA B. GIVEN and JULIAN BERNAT, JOINT INDEPENDENT EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Berkman v. Commissioner
Docket No. 3513-77.
United States Tax Court
T.C. Memo 1979-46; 1979 Tax Ct. Memo LEXIS 482; 38 T.C.M. (CCH) 183; T.C.M. (RIA) 79046; January 31, 1979, Filed Julian Bernat, for the petitioner. David W. Johnson, *484 for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal estate and gift taxes as follows: Estate Tax Date of Death
Deficiency
1/15/74
$ 45,856.80
Gift Tax Taxable Period
Deficiency
1968
$ 14,265.00
1969
9,810.00
1970
16,312.08
1972 1st qtr.
16,678.44
1973 2d qtr.
1,329.00
1973 3d qtr.
2,980.80
Concessions having been made, the only remaining issues for decision are: (1) Whether the decedent's transfer of $ 275,000 to his daughter, son-in-law, and the corporation wholly owned by his daughter and son-in-law in exchange for five promissory notes resulted in taxable gifts and, if so, to what extent. (2) The value to be given these promissory notes for Federal estate tax purposes. (3) Whether the transfer of $ 55,000 by the decedent to his daughter and son-in-law within three years of his death was in contemplation of death and, therefore, includible in the decedent's gross estate under section 2035. [1]
*485 (4) Whether travel expenses incurred by members of the decedent's family in connection with his burial are deductible from the gross estate under section 2053(a)(1) as funeral expenses in an amount greater than allowed by the respondent. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The joint independent executors of the Estate of Meyer B. Berkman, Barbara B. Given and Julian Bernat, were residents of El Paso, Tex., at the time of filing the petition herein. The decedent, Meyer B. Berkman, died of a stroke on January 15, 1974, at the age of 81. On the date of his death the decedent resided in El Paso, Tex. Prior to his death, the decedent transferred a total of $ 275,000 to Barbara B. Given, Kenneth C. Given, and Given Paint Manufacturing Company. Barbara B. Given (Barbara) is the decedent's daughter and Kenneth C. Given (Kenneth) is her husband. Given Paint Manufacturing Company (Given Paint Cot) is wholly owned by Barbara and Kenneth Given. All of the transfers occurred between November 1968 and March 1972. In the spring of 1968, Barbara and Kenneth made arrangements to borrow $ 100,000 from the Southwest National Bank of El Paso, Tex. *486 The loan was to be for 20 years at 7 percent interest. They needed the funds to rebuild one of the Given Paint Co. plants which had been destroyed by fire. While visiting Barbara and Kenneth in the fall of 1968, the decedent had a conversation with Kenneth in which he offered to lend them the money to rebuild the plant.The decedent stated that he was willing to lend the money at 6 percent interest. Since this was 1 percent less than they would have to pay the bank but approximately 3 percent more than he was currently earning on his money, the decedent believed both parties would benefit from this loan arrangement. On or before November 15, 1968, the decedent transferred $ 100,000 to Barbara and Kenneth Given. In exchange for this transfer, Barbara and Kenneth executed a promissory note in the face amount of $ 100,000 to the decedent dated November 15, 1968. By a money order dated April 23, 1969, the decedent transferred $ 50,000 to Barbara and Kenneth Given. In exchange for this transfer, Barbara and Kenneth executed a promissory note in the face amount of $ 50,000 to the decedent dated April 24, 1969. During 1970 the decedent transferred $ 30,000 to Given Paint Co. as *487 follows: (1) Personal check dated January 10, 1970, made payable to Given Paint Co. in the amount of $ 10,000; and (2) Personal check dated February 20, 1970, made payable to Given Paint Co. in the amount of $ 20,000. In exchange for these transfers, Kenneth Given executed a promissory note in the face amount of $ 30,000 on behalf of Given Paint Co. to the decedent dated November 19, 1970. Also during 1970, the decedent transferred $ 40,000 to Kenneth Given as follows: (1) Personal check dated June 2, 1970, made payable to Kenneth Given in the amount of $ 30,000; and (2) Personal check dated October 12, 1970, made payable to Given Paint Co. in the amount of $ 10,000. In exchange for these transfers, Kenneth executed a promissory note in the face amount of $ 40,000 to the decedent dated November 19, 1970. During 1971 and 1972, the decedent transferred a total of $ 55,000 to Barbara and Kenneth Given as follows: (1) Personal check dated February 11, 1971, made payable to Given Paint Co. in the amount of $ 20,000; (2) Personal check dated April 12, 1971, made payable to Given Paint Co. in the amount of $ 10,000; (3) Personal check dated November 8, 1971, made payable *488 to Barbara and Kenneth Given in the amount of $ 20,000; and (4) Personal check dated February 16, 1972, made payable to Kenneth Given in the amount of $ 5,000. In exchange for these transfers, Barbara and Kenneth executed a promissory note in the face amount of $ 55,000 to the decedent dated March 2, 1972. Each of these five promissory notes was a 20-year note, bearing 6 percent per annum, payable monthly, with no payment due on the principal until the maturity of the note, at which time the full balance of the principal was due. In addition, none of these notes were secured. However, from the date of execution, interest has been paid monthly on each note. The decedent did not file Federal gift tax returns for either 1968 or 1969. While Federal gift tax returns were filed by the decedent for subsequent years and calendar quarters, he reported none of the transfers to Barbara, Kenneth, and Given Paint Co. as taxable gifts. The prime interest rate for bank loans on the date each note was executed and on the date of death was as follows: Date
Prime Rate
11/15/68
6.25%
4/24/69
7.5%
11/19/70
7.25%
3/2/72
4.75%
1/15/74
9.75%
During the years in *489 which the decedent made transfers to Barbara and Kenneth, they were able to obtain substantial loans from commercial banks. As stated above, in May 1968 they qualified for a $ 100,000 loan with the Southwest National Bank of El Paso, Tex.
During 1969 the decedent had a stroke and, thereafter, he lived with Barbara and Kenneth until his death. As a result of his stroke, the decedent had a slight paralysis on his left side. However, it did not prevent him from conducting his financial affairs or traveling. In his will executed on November 4, 1969, the decedent directed that his entire estate be divided equally between his two daughters, Barbara Given and Gail Corbat. This bequest included the promissory notes executed by Barbara, Kenneth and Given Paint Co.
For Federal estate tax purposes, the decedent's executors valued the five promissory notes at 50 percent of face amount plus interest accrued to the date of death as follows: Executor's Date of Note
Face Amount
Estate Tax Value
11/15/68
$ 100,000
$ 50,080
4/24/69
50,000
25,040
11/19/70
30,000
15,024
11/19/70
40,000
20,032
3/2/72
55,000
27,544
In January 1974, Barbara and Kenneth *490 Given and their five children incurred air travel expenses in the amount of $ 2,077 to attend the decedent's funeral in Detroit, Mich. Thereafter, in July 1974 Barbara Given incurred air travel expenses in the amount of $ 294 to return to Detroit for the decedent's stone setting. Her husband, Kenneth, and two of their children accompanied her on this trip and together incurred $ 784 in air travel expenses. The total amount of these travel expenses, $ 3,155, was claimed as a funeral expense on the decedent's Federal estate tax return. In his notice of deficiency, respondent took protective positions with respect to the transfers made by the decedent. For gift tax purposes, the respondent treated the promissory notes as having no value, therefore, the entire amount of each transfer constituted a taxable gift. For estate tax purposes, respondent determined that the notes had a fair market value equal to their face amount and increased the decedent's gross estate accordingly. With regard to the 1972 transfer by the decedent, the respondent concluded this transfer was in contemplation of death and included the full amount in decedent's gross estate. Finally, of the $ 3,155 claimed *491 as funeral expenses, respondent disallowed all but $ 284.82. The amount allowed represented the cost incurred by Barbara Given to bring the decedent's body to the place of burial and for her return home. OPINION The first issue for our decision is whether the decedent's transfer of $ 275,000 to his daughter, son-in-law, and their wholly owned corporation in exchange for five promissory notes resulted in taxable gifts, and if so, to what extent. Under section 2501(a)(1) there is imposed a tax on the "transfer of property by gift." While the Code does not explicitly define the term "taxable gift," section 2512(b) provides, "where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift * * *." This rule that a transfer for insufficient consideration results in a gift is, however, subject to an important exception. Section 25.2512-8, Gift Tax Regs., provides in part: However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free *492 from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth. * * * It is well established that this exception is not limited to strictly business transactions but includes all bona fide transfers at arm's length in which no donative intent is present. Harris v. Commissioner,340 U.S. 106, 112 (1950); Stern v. United States,436 F.2d 1327, 1330 (5th Cir. 1971); Anderson v. Commissioner,8 T.C. 706, 720 (1947). Moreover, even a family transaction may, for gift tax purposes, be treated as one "in the ordinary course of business" if each one of the parenthetical criteria in section 25.2512-8, Gift Tax Regs., is fully met. Stern v. United States,supra;Rosenthal v. Commissioner,205 F.2d 505, 509 (2d Cir. 1953). With these principles in mind, to resolve the issue of whether the transfers made by the decedent were taxable gifts, we must determine to what extent the notes he received in exchange represented consideration for these transfers. The respondent first contends there was no intention on the part of the decedent to collect *493 the $ 275,000 and, thus, the promissory notes were not valid obligations and did not represent any consideration for the transfers made by the decedent. Consequently, all five transactions resulted in taxable gifts to the full extent of the amounts transferred. In the alternative, the respondent argues that even if the promissory notes were valid obligations, the transfers the decedent made were not at arm's length, therefore, the difference between the amount of each transfer and the fair market value of each note given in exchange constitutes a taxable gift. Petitioner maintains that the decedent entered into an arm's-length loan arrangement with each transferee and the promissory notes he received were valid, enforceable obligations which constituted full and sufficient consideration for each transfer. Therefore, none of the transfers resulted in taxable gifts. [2]
*494 With respect to the respondent's first contention, while we recognize that intrafamily transfers are subject to special scrutiny to determine if they are in reality what they appear to be on their face, [3] we believe the promissory notes were valid, enforceable obligations.Examination of the notes reveals that they were executed in proper legal form and signed by the obligors. Moreover, the transferees carried out their obligations under the notes; they paid the interest due every month without exception. Finally, there is no evidence to support the respondent's contention that at the time of the transfers the decedent did not intend to collect the notes. Although we have rejected the respondent's primary contention, with respect to the first four transfers made by the decedent, we agree with his alternative argument that these transfers were not at arm's length, and therefore, the difference between the amount of each transfer and the fair market value of each promissory note given in exchange constitutes a taxable *495 gift. While the petitioner contends that the transfers were arm's-length transactions, the evidence in the record simply does not support its position. Even though the decedent may have had a profit motive in making these transfers because the interest rate on the notes was higher than he was earning on his money otherwise, this factor alone does not mean that the transfers were made at arm's length. There are other factors here which must be considered. To begin with, the decedent was over 75 years old when he began making these transfers in exchange for notes due in 20 years. In addition, the decedent took no security on these notes. Moreover, the notes did not require any principal payments until maturity. Finally, the transferees, the decedent's daughter and son-in-law, were the natural objects of his bounty. In his will, the decedent directed that all his property be divided equally between his two daughters. As a result, Barbara Given was bequeathed one half of the notes on which she was a debtor. Taking all of these factors into account, we conclude that the petitioner has failed to meet its burden of proof that the transfers were at arm's length and free of donative *496 intent. Rule 142(a), Tax Court Rules of Practice and Procedure.
Since these transfers were not at arm's length or free of donative intent, the parenthetical criteria of section 25.2512-8, Gift Tax Regs., have not been met. Consequently, the promissory notes cannot be considered adequate and full consideration under this section of the regulations. However, because the notes were valid, enforceable obligations that paid interest we believe they did constitute consideration to the extent of their fair market values. We, therefore, hold that the difference between the amount of each of the first four transfers and the fair market value of each promissory note given in exchange constitutes a taxable gift. See Estate of Reynolds v. Commissioner,55 T.C. 172, 201 (1970); Blackburn v. Commissioner,20 T.C. 204, 207 (1953). [4]
*497 With respect to the transfer of $ 55,000 on March 2, 1972, since the interest payable on the note the decedent received was 6 percent and the prime rate at that time was only 4.75 percent, we hold that this transfer was made for adequate and full consideration and, therefore, the decedent made no taxable gift on this exchange. Where a gift of property is made its fair market value on the date of the gift, less the fair market value on such date of any consideration received by the donor, shall constitute the amount of the gift. Section 2512(a) and (b). Thus, to calculate the amount of the gifts made by the decedent, we must determine the fair market value of each promissory note on the date of execution. [5]
*498 The question of valuation is a subjective one and requires the Court to exercise its best judgment in light of all the facts of the case. While the record leaves much to be desired, having considered the rate of interest, date of maturity, lack of security and the solvency of the debtors, we have determined the fair market value of each note on the date of execution and the resulting amount of gifts to be as follows: Date of
Fair Market
Amount Execution
Face Amount
Value
of Gift
11/15/68
$ 100,000
$ 85,000
$ 15,000
4/24/69
50,000
37,500
12,500
11/19/70
30,000
24,000
6,000
11/19/70
40,000
32,000
8,000
The second issue for our decision is the value to be given these promissory notes for Federal estate tax purposes. Since the decedent dies owning these notes, under section 2031 their value on the date of his death is includible in his gross estate. [6]
While the gnneral rule is that property is includible in a decedent's gross estate at its fair market value, [7] with respect to the valuation of notes *499 section 20.2031-4, Estate Tax Regs., provides in part as follows: The fair market value of notes, secured or unsecured, is presumed to be the amount of unpaid principal, plus interest accrued to the date of death, unless the executor establishes that the value is lower or that the notes are worthless. * * * If not returned at face value, plus accrued interest, satisfactory evidence must be submitted that the note is worth less than the unpaid amount (because of the interest rate, ddate of maturity, or other cause), * * *. The evidence presented by the petitioner showed that the interest rate on all five notes held by the decedent was 6 percent, while the prime rate of interest on the date of his death, January 15, 1974, was 9.75 percent. Taking into account this low rate of interest, together with the lack of security and the considerable length of time until maturity, we conclude that these notes are includible in the decedent's gross estate at their fair market value and not at their face amount. [8] In our best judgment, the fair market value of each of these notes on the date of the decedent's death, *500 including accrued interest, was as follows: Date of Note
Face Amount
Fair Market Value
11/15/68
$ 100,000
$ 50,080
4/24/69
50,000
24,040
11/19/70
30,000
13,524
11/19/70
40,000
18,032
3/2/72
55,000
22,044
The third issue for our decision is whether the transfer of $ 55,000 by the decedent to his daughter and son-in-law within three years of his death was in contemplation of death and, therefore, includible in the decedent's gross estate under section 2035. [9]
*501 Between February 11, 1971, and February 16, 1972, the decedent made four transfers of cash totalling $ 55,000 to Barbara and Kenneth Given. In exchange for these transfers, Barbara and Kenneth executed a promissory note in the face amount of $ 55,000 to the decedent dated March 2, 1972. The interest payable on the note was 6 percent, while the prime rate on the date of execution was only 4.75 percent. Since all four transfers occurred within three years of the decedent's death on January 15, 1974, the respondent contends that the entire $ 55,000 was transferred in contemplation of death and is, therefore, includible in the decedent's gross estate under section 2035. Section 2035(b) states as a general rule that all transfers made by a decedent within three years of death are presumed to be in contemplation of death. However, there is an exception contained in the parenthetical language of section 2035(b) for bona fide sales. [10] Under this exception, when a decedent transfers property in a bona fide transaction for adequate and full consideration, the transfer is outside the scope of section 2035. *502 We believe the transfer of $ 55,000 by the decedent to Barbara and Kenneth comes within this exception. Since the note the decedent received paid 6 percent interest at a time when the prime rate was only 4.75 percent, we conclude that the loan resulted in a bona fide transfer for adequate and full consideration. Therefore, no portion of the $ 55,000 is includible in the decedent's gross estate under section 2035. The fourth and final issue for decision is whether travel expenses incurred by members of the decedent's family in connection with his burial are deductible from the gross estate under section 2053(a)(1) as funeral expenses in an amount greater than allowed by the respondent. In January 1974, Barbara and Kenneth Given and their five children incurred air travel expenses in the amount of $ 2,077 to attend the decedent's funeral in Detroit, Mich. Thereafter, in July 1974, Barbara Given incurred air travel expenses in the amount of $ 294 to return to Detroit for the decedent's stone setting. Her husband, Kenneth, and two of her children accompanied her on this trip and together incurred $ 784 in air travel expenses. The total amount of these travel expenses, $ 3,155, *503 was deducted as a funeral expense on the decedent's Federal estate tax return. The respondent disallowed all but $ 284.82. This amount represented the cost incurred by Barbara Given to travel to Detroit for the decedent's funeral. Petitioner contends that the costs incurred by the decedent's immediate family to attend his funeral and the traditional stone setting are reasonable within the meaning of section 2053(a) and Texas law, and, therefore, the total amount of travel expenses incurred is properly deductible on the decedent's Federal estate tax return. The respondent, on the other hand, takes the position that under section 2053(a)(1) and the applicable regulations, the only travel expenses deductible on a decedent's Federal estate tax return as funeral expenses are those incurred by one person to bring the decedent's body to the place of burial. Section 2053(a)(1) permits a deduction from the value of a decedent's gross estate for funeral expenses which are allowable by the laws of the jurisdiction under which the estate is being administered. Under the laws of Texas, where the decedent's estate was administered, all reasonable funeral expenses are allowed as claims against *504 the estate. [11]
With respect to the deductibility of travel expenses, section 20.2053-2, Estate Tax Regs., provides that "included in funera expenses is the cost of transportation of the person bringing the body to the place of burial." The basis of this deduction is the necessity of the expense in connection with the decedent's funeral. In the present case, we believe that the setting of the stone was an integral part of the decedent's burial, which made the presence of a family member necessary to ensure the completion of this task. Thus, we hold that in addition to the amount allowed by the respondent, the $ 294 in travel expenses incurred by Barbara Given to return to Detroit for her father's stone setting constitutes a reasonable funeral expense under Texas law [12] and is, therefore, deductible under section 2053(a)(1) on the decedent's Federal estate tax return. *505 However, as for the travel expenses incurred by the other family members to attend the funeral and stone setting, we do not believe these were necessary expenses in connection with the decedent's funeral. In other words, they were not funeral expenses within the meaning of section 2053(a)(1) and section 20.2053-2, Estate Tax Regs. Thus, we hold that respondent's disallowance of these additional travel expenses was proper. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, and in force during the years in issue.↩
2. Petitioner cites Crown v. Commissioner,67 T.C. 1060 (1977), affd. 585 F.2d 234 (7th Cir. 1978), without any supporting argument. However, if petitioner is relying on this case, we believe it to be distinguishable on at least two grounds. First, the issue was whether interest free loans to relatives of the lender give rise to taxable gifts from the lender to the borrowers to the extent of the value of the use of the funds loaned. The issue of whether the difference between the amounts loaned and the fair market values of the notes received in exchange constitutes a gift was not before the Court. Second, the loans in Crown↩ were evidenced by either demand notes or open accounts, not long-term notes with principal only due at maturity, as in the instant case.
3. Estate of Lang v. Commissioner,64 T.C. 404, 413 (1975); Estate of Reynolds v. Commissioner,55 T.C. 172, 201↩ (1970).
4. The case of Blackburn v. Commissioner,20 T.C. 204 (1953), is strikingly similar to the present case. In that case, the petitioner transferred to her children property with a fair market value of $ 245,000 in exchange for a secured promissory note in the amount of $ 172,517.65 bearing interest at 2.25 percent per annum. At that time, the usual rate of interest for a similarly secured note was 4 percent. Payments of $ 600 per month were to be made for 34 years and 6 months. On these facts the Court held that the difference between the fair market value of the property transferred and the fair market value of the note petitioner received in exchange constituted a gift. The Court reasoned: It seems to us that it would be unrealistic for us to hold that a note with a face value of $ 172,517.65, bearing interest only at the rate of 2 1/4 per cent per annum and having 34 1/2 years to run, had a fair market value on the date of its receipt equal to its face value. Undoubtedly, petitioner was fully justified in believing that the note would be paid in full according to its terms, but that factor alone does not determine the fair market value of a note. Other factors such as the rate of interest which the note bears and the length of maturity must be considered. We believe the principle of the Blackburn↩ case to be equally applicable herein.
5. Sec. 20.2031-1(b), Estate Tax Regs., and sec. 25.2512-1, Gift Tax Regs., define the term "fair market value" with identical language. Sec. 20.2031-1(b), Estate Tax Regs., provides in part: The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. Sec. 25.2512-4, Gift Tax Regs., provides that the fair market value of notes, secured or unsecured, is presumed to be the amount of unpaid principal, plus accrued interest to the date of the gift, unless the donor establishes a lower value. The language of this provision indicates it only applies where the donor transfers notes as a gift. It does not apply where, as in the instant case, the donor receives notes as partial consideration for a transfer of other property. See Estate of Reynolds v. Commissioner,supra,↩ at 202 n. 18.
6. No election was made by the executors to value the decedent's property as of the alternate valuation date under sec. 2032.↩
7. See sec. 20.2031-1(b), Estate Tax Regs. See also note 5, supra.↩
8. In reaching our conclusion herein, while we have carefully considered the testimony of petitioner's witness on the valuation of these promissory notes, we did not find it helpful.↩
9. In 1976 sec. 2035 was amended effective for estates of decedents dying after December 31, 1976. Prior to amendment, sec. 2035 read as follows: SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) Application of General Rule.--If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.↩
10. Sec. 20.2035-1(b), Estate Tax Regs., provides that the exception covers all bona fide transfers and not just sales.↩
11. Texas Prob. Code, sec. 322↩ (1971).
12. See Goeth v. McCollum,94 S.W. 2d 781, 783 (Tex. Civ. App. 1936). See also Pan American Fire and Casualty Co. v. Trammell,322 S.W. 2d 13, 16 (Tex. Civ. App. 1959); Rimbow v. Rimbow,191 S.W. 2d 89, 91↩ (Tex. Civ. App. 1945).